654 So.2d 17 (1995)
Woodie C. LAMBERT
v.
STATE of Mississippi.
Nos. 91-KA-00942-SCT, 91-KA-00943-SCT.
Supreme Court of Mississippi.
April 6, 1995.
*18 Kim T. Chaze, Hattiesburg, for appellant.
Michael C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.

ON PETITION FOR REHEARING
SULLIVAN, Justice, for the Court:
The original opinion in this case is withdrawn and this opinion is substituted therefor.
This case comes to this Court on appeal from the Circuit Court of Walthall County. On August 5, 1991, Woodie C. Lambert was indicted on six counts, consisting of one count of sexual battery and five counts of touching or handling a child for lustful purposes.[1] Lambert had been originally charged with these crimes four months earlier and had received a preliminary hearing on April 11, 1991 wherein he was represented by Calvin Cosnahan, the same counsel who ultimately represented him at trial. On August 15, 1991, Lambert was arraigned and trial was set for August 22, 1992.
Lambert filed numerous motions including a motion for severance and a motion for change of venue. Cosnahan also moved to withdraw as counsel and requested a continuance. The court granted a severance as to Count II and denied the other motions. Lambert was tried on Count II and found guilty.
A week later, on August 29, 1992, Lambert was tried on another count, Count III, and also found guilty. Lambert was sentenced to serve eight years on each count, the sentences to run consecutively.
For purposes of appeal, the two cases have been consolidated. Feeling aggrieved Lambert appeals, raising the following issues:
I.
When an Accused is Arraigned and Informed of the charges in a deficient multi-count indictment six days before his Trial, and his Court-appointed Attorney announces to the Court that he is "Not Ready," a continuance should have been [sic] granted  especially since the State withheld Evidence from the defendant.
II.
The Defendant, seeking a Change of Venue, filed the appropriate Motions, pursuant to § 99-15-35, stating that, due to the Pretrial Publicity, he could not receive a fair trial and, thus, created a presumption that the State failed to rebut herein.
III.
The Multi-count Indictment in this case is Violative of § 99-7-2 Miss. Code Ann. in that it does not meet the Criteria established therein.
IV.
The Verdict is against the Overwhelming Weight of the Evidence and Defendant's Motions for a Directed Verdict should have been Granted in that the Evidence consists of an alleged Non-invasive Action reported One Year after the alleged incident.
We find that Issue I is dispositive of this case. The trial court should have granted the defendant his requested continuance. *19 We must reverse the lower court because the failure to grant a continuance deprived the defendant of a fair trial.

THE FACTS
Woodie Lambert is the divorced father of three daughters. At the time of these alleged acts, his oldest daughter was living with him. Two daughters from a second marriage would come to visit on various weekends. Sometimes the daughters would invite friends to come and spend the night. It was during these times when friends of his daughters would visit that Lambert is alleged to have acted improperly toward the minor females.
On or about August 10, 1990, Woodie Lambert's daughters, June and Joan, were visiting for the weekend and invited two friends, M.D. and D.R., to visit. Lambert's oldest daughter was away with her boyfriend.
After playing hide and seek, Joan and D.R. found June and M.D. in June's room. June was smoking a cigarette. Joan and D.R. also wanted a cigarette and asked M.D. to get some cigarettes from Woodie Lambert.
M.D. went to the back yard where Lambert was hanging clothes and asked Lambert if she could have some cigarettes. M.D. testified that Lambert told her she could if she would give him a real kiss. She then kissed him on the cheek. M.D. said that Lambert then placed his hands on her bottom and tried to kiss her on the mouth. M.D. freed herself and ran into the house. She told Joan and D.R. what had happened.
D.R. testified that she watched as M.D. went back to Lambert. D.R. said that she saw Lambert place his hand on M.D.'s bottom and try to kiss her. Joan testified that she saw M.D. go into the back yard, close to her father, but she could not see what happened.
M.D. testified that Joan and D.R. said that they did not believe her and told her to go back to Lambert so they could see what he did to her.
M.D. testified that when she went back to where Lambert was, Lambert again asked her for a kiss. Lambert put his hands inside her shirt and on her breast. M.D. also testified that Lambert put his hand inside her shorts and tried to touch her "private part." She said that she resisted by holding her legs tightly together.
June testified that her view of Lambert and M.D. was partially obstructed by a towel hanging on the clothes line but that she could see M.D.'s and her dad's feet close together. She said that M.D.'s feet were moving as if she were trying to get away. June said that M.D. was crying when she came back inside.
Later, M.D. and June went to sleep with Lambert on his waterbed. At first, according to M.D., she and June were sleeping next to each other. Later when she woke up, Lambert had moved over and was sleeping by M.D. and holding her tight. M.D. got up to go to the bathroom and went to sleep in another room where Joan and D.R. were.
M.D. testified that she told Lambert's oldest daughter Mary what happened and that when Mary confronted Lambert he denied that it happened.
M.D. did not tell her mother what happened until later. C.M., M.D.'s mother, testified that M.D. was in the fifth grade and was ten years old at the time of trial. She testified that M.D. told her what happened on March 22.
Lambert testified as the only witness for the defense. Lambert testified that one Friday night, his daughter and her boyfriend had borrowed his car and left the boyfriend's truck parked in front of his house. Lambert said that he caught the girls smoking in the back of the pickup truck. The cigarette butts matched the boyfriend's cigarette brand. Lambert said that he then gave them each one of his cigarettes and made them light a cigarette and smoke it to "teach them a lesson." When this did not work he told them to go play.
According to Lambert, M.D. later came out to him while he was hanging clothes and grabbed him and asked for some more cigarettes. Lambert said that M.D. was a very affectionate girl and always called him Daddy. Lambert testified that M.D. offered to give him five real kisses if he would give her cigarettes. Lambert said he refused.
*20 Lambert testified that the next morning his older daughter Mary came to him and told him that M.D. had said that he touched her on her body and tried to kiss her. Lambert said that he confronted M.D. with the accusation and she first denied it. According to Lambert, she then admitted saying she was "just trying to scare the other kids."
Lambert said that M.D. came back to his house a couple of times after that.
The second trial involved Count III of the indictment. This concerned an incident which occurred on July 20, 1990. J.D. went to eat pizza with Joan and June Lambert. The girls had gone out to celebrate Joan's birthday. Afterwards they went to Lambert's house to spend the night.
J.D. testified that when she and Joan were together in the bathroom she heard something outside the door. When she looked outside she saw Lambert who claimed to be looking for something he dropped. After closing the door, J.D. stood in front of the door because of a hole that would allow someone to look into the bathroom. When Joan had finished her bath, J.D. asked her to stand in front of the door while she bathed and was dressing. Joan testified that this is what happened.
After leaving the bathroom, J.D. and Joan went to different parts of the house. According to J.D., Lambert came toward her like he wanted to hug her. As she moved toward him, he placed both of his hands on her bottom and held her buttocks tightly in his hands. According to J.D., Lambert was wearing some blue shorts that he slept in. There were no witnesses to what happened.
J.D. testified that she told D.R. about what happened at the time. J.D. said that she warned her sister not to go to Lambert's house and that she never went back.
C.M., J.D.'s mother, testified that J.D. was thirteen at the time of the incident. She confirmed that J.D. did not go back to Lambert's house and had begged her sister M.D. not to visit June at Woodie Lambert's house.
Lambert denied being outside the bathroom door. He also denied speaking to J.D. outside the door. He also denied that he held J.D. by her buttocks or tried to pull her toward him. He admitted that he might have hugged J.D.
In both cases, Lambert was found guilty of touching, handling and rubbing a female child under the age of 14. Lambert was sentenced to eight years each on count II and count III with the sentences to run consecutively.

DISCUSSION
When an Accused is Arraigned and Informed of the Charges in a Deficient Multi-count Indictment Six Days before his Trial, and his Court-appointed Attorney announces to the Court that he is "Not Ready," a Continuance should have been Granted  especially since the State withheld Evidence from the Defendant.
On August 15, 1991, Woodie Lambert was arraigned on a six count indictment. At the arraignment trial on all counts was set for August 22, 1991.
The State's Motion for Nolle Prosequi as to count six of the indictment was granted and an order entered on August 20, 1991. The indictment alleged the wrong victim.
On August 21, 1991, Lambert's counsel, Calvin Cosnahan, filed a Motion to Suppress Statements, Motions to Suppress Evidence, Motion to Withdraw as Counsel, Demurrer to the multi-count indictment, Motion for Severance, and Motion for Change of Venue.
Four months earlier, on April 11, 1991, Lambert had been represented by Cosnahan at the preliminary hearing. The exact nature of the representation is not clear from the record, but Cosnahan was apparently asked to represent Lambert by the court until he could obtain his own attorney. Cosnahan refers to himself as "court-appointed attorney" and this is also how Lambert's attorney on appeal refers to Cosnahan. Cosnahan indicated to the court that he had not been in contact with Lambert between the preliminary hearing and the arraignment.
At the time of the arraignment, Lambert informed Cosnahan "that he would see what he could do about his own attorney." Lambert contacted Kim T. Chaze about representing Lambert. The indictment was on a *21 Thursday, Chaze was not in his office on Friday and Lambert talked to him on Monday. Cosnahan was able to talk to Chaze on Tuesday and Chaze agreed to accept Lambert's case if the case could be continued to allow him an opportunity to investigate the case. Chaze contacted the court and district attorney about the case, and indicated that he wanted to represent Lambert but could not do so due to having only 48 hours to prepare the case, which involved six separate counts.
The court took the position that, since Lambert had been represented by counsel for four months, that there had been adequate time to prepare for trial even though the specific charges against Lambert were not then known. The motion to withdraw was denied.
Lambert is represented in this appeal by Kim Chaze, the attorney who was unable to take his case at trial level.
The court granted the motion for severance on the morning of trial and indicated that count II would be tried. This was the first indication that Lambert would not be tried on all five remaining counts that day.
Cosnahan indicated to the court that he had prepared motions for the case over the weekend and had been in a manslaughter case in Louisiana on Monday and continued to work on motions on Tuesday and filed them on Wednesday. Cosnahan indicated to the court that he had not had adequate time to prepare for trial. The court declined to continue the case. The trial was held and Lambert found guilty.
At the conclusion of the trial, defense counsel asked the court to reset the remaining counts for the next term of court. Cosnahan told the court that he would not have time to prepare because of his involvement with another trial. The trial was set for August 30, 1991. At that time the court also instructed counsel that Lambert was "absolutely, positively not to contact any of the witnesses."
On August 26, at a hearing on pretrial motions, defense counsel again moved for a continuance. Counsel Cosnahan also raised his objection to the indictment because of the failure to allege a specific date and location on all the offenses. It was at this hearing that the State informed counsel that count III would be tried next. Counsel again tried to persuade the court that he had not had adequate time to prepare a defense. Counsel told the court that he would be in Rankin County Chancery Court on Wednesday and could not prepare the case for then. The trial date was then re-scheduled for Friday, August 30, 1991. The date of trial was later adjusted to Thursday, August 29, 1991.
At the commencement of the second trial, defense counsel again renewed his request for a continuance "on the basis that we still have not had sufficient time to prepare the case for trial." The court denied the motion again indicating that since counsel had been involved in the justice court preliminary hearing, there had been adequate time to prepare a defense. Lambert was again found guilty. In both cases, the only witness for the defense was the defendant Woodie Lambert.
Under this assignment of error, Lambert also raises as an issue the failure of the State to provide him with certain discovery prior to the first trial. Defense counsel objected to the testimony of D.R. and the other minors involved arguing that the State had failed to provide copies of statements made by these witnesses and copies of notes taken in preparation of their testimony.
Counsel argued that Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice had been violated. The court allowed a brief recess to allow the defense to study the witnesses' statements which had not been provided. The court then inquired if the defense had "had ample opportunity and time to study." Defense counsel responded: "Yes, sir. We've found out what the statements did provide, Your Honor." Defense counsel requested no further relief from the court.
Because counsel accepted the court's offer of a recess and did not request any additional relief from the court, this breach of the rules standing alone cannot be the basis for reversal. However, it must be looked on as a *22 factor in the overall question of the court's exercise of discretion.
The decision to grant or deny a continuance is left to the sound discretion of the trial court. Johnson v. State, 631 So.2d 185, 187 (Miss. 1994); Wallace v. State, 607 So.2d 1184, 1190 (Miss. 1992); Morris v. State, 595 So.2d 840, 844 (Miss. 1991); Fisher v. State, 532 So.2d 992, 998 (Miss. 1988). Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse. Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss. 1993).
Miss. Code Ann. § 99-15-29 states: "A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom."
In Byrd v. State, 522 So.2d 756, 759 (Miss. 1988), we held that the defendant was not entitled to a continuance so that he could hire a private attorney instead of being represented by his court-appointed attorney. We stated the following:
This Court has held that when an accused appears on the morning of trial with a new lawyer and asks for a continuance, the trial court does not abuse its discretion in denying the continuance. Harrison v. State 520 So.2d 1352 (Miss. 1987); Gates v. State, 484 So.2d 1002 (Miss. 1986); Collins v. State, 369 So.2d 500 (Miss. 1979); Burnett v. State, 285 So.2d 783 (Miss. 1973).
The most apparent difference in the cases is that Lambert's counsel, unlike Byrd's, did not announce that he was prepared for trial. Lambert's lateness in hiring counsel was not due to procrastination, but was the result of the short period of time between indictment and trial. Cosnahan informed the court of prior commitments involving trials in other courts which hampered his ability to prepare. He had a trial in Louisiana before the first trial, and another one in Rankin County Chancery Court before the second trial.
Previous commitments would not be as critical but for the extreme short notice of Lambert's trials. Lambert was indicted on Thursday and tried the following Thursday. The second trial was one week later. The most troubling aspect of this case is that defense counsel was not told until the morning of the first trial that count II would be tried that day. This is certainly better than requiring counsel to proceed on all five remaining counts, but the court still did not afford Lambert sufficient time to respond with a defense. Similarly, Lambert's counsel was not apprised until three days before the trial that the second trial would be on count III.
The trial judge's reasoning in denying the continuances indicates a clear abuse of discretion. The judge relied on the fact that counsel had been involved in the case since the preliminary hearing allowing him an opportunity to prepare since that time. However, the original charge against Lambert was different from those under which he was indicted. Counsel clearly indicated that he had not been in contact with Lambert since the preliminary hearing. Even if he had, it is not clear how he could have prepared a defense when the nature of the charges was not fully known at that time.
This case does not involve just a single reason for the continuance but several. Standing alone, wanting to hire a different attorney would not warrant a continuance. This factor when combined with the extremely short period of time between the arraignment and the first trial, the "court appointed" counsel's previous trial commitments, the failure of the State to supply discovery prior to trial, and the problems of the multi-count indictment clearly demonstrates an abuse of discretion which resulted in Lambert not being afforded a properly prepared defense. Counsel's representations to the court that he was not adequately prepared should have been given greater weight.
While there may be no demonstrative affidavit from Lambert of evidence and prejudice against him and while there may be no proof as is required under Miss. Code Ann. § 99-15-29 (Supp. 1972), it staggers the imagination that in the circumstances outlined above competent counsel could be expected to proceed to trial and provide a competent defense for any defendant.
*23 Even if upon remand Lambert is again convicted and offers no different testimony than was offered in the two trials that have already taken place, at least both the defense and the State of Mississippi can have confidence in the outcome of the trial and a sense of certitude about its basic fairness.
While Mississippi need not provide any of its citizens with a perfect trial, she must provide all of her citizens with a fair one. Under the circumstances in this record, it was a clear abuse of discretion not to grant continuances and certainly it was an abuse of discretion not to allow privately hired counsel a continuance in order to step into the shoes of the court appointed counsel to defend Lambert.
The mere uncertainty of the nature of the charges brought about by the multi-count indictment are also enough to find that the failure to grant a continuance was an abuse of discretion requiring reversal.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PITTMAN, BANKS and McRAE, JJ., concur.
SMITH, J., dissents with separate written opinion joined by HAWKINS, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr., J.
SMITH, Justice, dissenting:
The majority faults the trial judge's reasoning in his denial of Lamberts's "last minute" requested continuances, writing that such conduct by the trial court amounts to a clear abuse of discretion. I disagree with the majority.
Attorney Cosnahan, by court appointment, had been representing Lambert on a charge of sexual battery and five counts of touching or handling a child for lustful purposes for over four months prior to the actual trials of these two cases. Lambert had been afforded at preliminary hearing on the charges on April 11, 1991 wherein he was represented by Cosnahan. The majority writes that in August 1991 Lambert didn't understand the nature of the charges against him. The majority pronouncement notwithstanding, Lambert had known since the preliminary hearing that he was charged with molesting young female children who were friends of his two minor daughters.
Lambert failed to cooperate with Cosnahan from the very beginning, insisting that he was going to hire his own counsel rather than continue to allow Cosnahan, court appointed counsel, to represent him at trial. However, Lambert never got around to even attempting to hire substitute counsel until a couple of days prior to trial. Cosnahan was compelled to file a motion to withdraw as counsel. I would not fault this public defender because of the conduct of his client, Lambert.
The majority opinion totally ignores precedent caselaw and the requirements of Miss. Code Ann. § 99-15-29. Lambert failed to comply with the caselaw or the statute. The facts of this case are certainly illustrative of the "catch-22" situation the trial courts all too often find themselves in. On the one hand courts are trying to give speedy trials to defendants, yet find that they are overwhelmed with crowded trial dockets, too few prosecutors, public defenders, and trial judges. All the while these same courts are subjected by defendants to continuous 270 day and constitutional claims of violations of speedy trial rights. Then, on the other hand, courts are the recipients of complaints such as Lambert's of "a little too speedier trial" than desired. It's a no win situation for the district attorneys and trial judges.
Close scrutiny of Lambert's claims reveals the obvious fact that it was Lambert's actions which caused Cosnahan to attempt to withdraw as attorney for Lambert as well as ask for a continuance. At the time of the arraignment, Lambert informed Cosnahan "that he would see what he could do about his own attorney." Yet, Lambert did nothing until the "last minute." Lambert finally contacted Kim T. Chaze about representing Lambert. The indictment was handed down on a Thursday. Chaze was not in his office on Friday. Lambert talked to Chaze on Monday. Cosnahan was able to talk to Chaze on Tuesday and Chaze agreed to accept Lambert's case if the case could be continued to allow him an opportunity to investigate the case. Chaze contacted the court and district attorney about the case, *24 and indicated that he wanted to represent Lambert but could not do so with only 48 hours in which to prepare. Lambert never hired Chaze as his attorney. Chaze, although clearly made aware of the trial setting by the circuit judge, did not show up for the trial. Cosnahan did show up and made a good showing in defending Lambert.
Lambert raises the failure of the State to provide him with copies of statements made by witnesses and notes taken in preparing for their testimony. The trial court allowed a recess, applied the Box v. State, 437 So.2d 19 (Miss. 1983) guidelines, enabling the defense to review the statements relating to the witnesses. The court then inquired if the defense had "had ample opportunity and time to study." Cosnahan responded: "Yes, sir. We've found out what the statements did provide, Your Honor." Cosnahan requested no further relief from the court.
Because counsel accepted the court's offer of a recess and did not request any additional relief from the court, this breach of the rules standing alone cannot be the basis for reversal.
This Court in Harrison v. State, 635 So.2d 894 (Miss. 1994), stated:
Failure to strictly comply with Rule 4.06 is not necessarily fatal:
When confronted with an alleged Rule 4.06 violation, this Court must review the record to determine whether the judge followed the guidelines[s] enunciated in Box v. State, 437 So.2d 19, 22-26 (Miss. 1983).
Id. at 898.
Also in Harrison, this Court, citing Holland v. State, 587 So.2d 848 (Miss. 1991), reminded the Bar that when the trial court complies with the Box procedures some discovery violations by the State can be cured. Harrison at 900.
In Robinson v. State, 508 So.2d 1067 (Miss. 1987), this Court stated:
Our holding here should not be misinterpreted as indicating that failure to make pretrial disclosure requires per se reversal. We have recognized that non-discovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accommodation. See, Foster v. State, 484 So.2d 1009 (Miss. 1986); Jones v. State, 481 So.2d 798 (Miss. 1985); Davis v. State, 472 So.2d 428 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985); See also, Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring).
Robinson at 1071. (emphasis in original.)
In Byrd v. State, 522 So.2d 756, 759 (Miss. 1988), this Court held that the defendant was not entitled to a continuance in order to hire a private attorney instead of being represented by his court-appointed attorney. This Court stated the following:
This Court has held that when an accused appears on the morning of trial with a new lawyer and asks for a continuance, the trial court does not abuse its discretion in denying the continuance. Harrison v. State, 520 So.2d 1352 (Miss. 1987); Gates v. State, 484 So.2d 1002 (Miss. 1986); Collins v. State, 369 So.2d 500 (Miss. 1979); Burnett v. State, 285 So.2d 783 (Miss. 1973).
The major difference in the cases is that Lambert's counsel, unlike Byrd's, did not announce that he was prepared for trial. Cosnahan told the court of prior trial commitments in other courts which hampered his ability to prepare Lambert's.
Lambert, represented by Cosnahan by court appointment, at his preliminary hearing on April 11, 1991, had over four months within which to consult with his attorney and prepare for trial. Lambert did nothing in preparation for trial. In striking similarity to Byrd, Lambert attempted two days before trial to substitute attorney Chaze for Cosnahan. The attempted substitution of attorneys was conditioned, however, upon Lambert's new attorney being allowed a continuance. It is noteworthy that Lambert first stated his intentions to hire private counsel after the preliminary hearing in April, 1991. Cosnahan was left to believe that Lambert would hire another attorney. Cosnahan apparently realized shortly before trial that Lambert had not hired other counsel and that he (Cosnahan) was going to have to represent Lambert at trial after all. While *25 Cosnahan was trying as best he could to prepare for trial, Lambert on the other hand, was still busy trying to secure another attorney. Lambert should have been spending this valuable time with Cosnahan in preparation for trial. It is little wonder that Cosnahan felt compelled to file a motion to withdraw as Lambert's attorney. The court obviously viewed Lambert's last minute maneuvering as being similar to Byrd and would not allow Lambert to substitute attorneys only two days before trial, nor would the court allow Lambert a continuance.
Lambert did not sufficiently support his request for more time with specific information as to what would have been accomplished by the requested additional time. This Court has stated in Shaw v. State, 378 So.2d 631 (Miss. 1979):
In summary, our decisional law construing the statute is that in considering whether a continuance should have been granted, each case must be decided solely on its own merits and no rigid rule can be laid down.
It is noteworthy that the record is devoid of any evidence or proof as to precisely how additional time by way of continuance might have been used to his advantage. There was merely the naked statement of counsel that he had other cases set for the term . .. We find no merit to this argument on this record where defendant's privately employed attorney had eight days to prepare for trial.
Id. at 634.
As in Shaw, Lambert's counsel, although having additional trials during a portion of the time prior to trial, had a week after Lambert's arraignment to prepare for trial and another week prior to the second trial.
The record indicates that the trial court had contact with attorney Kim Chaze prior to the first trial. Chaze apparently did not attempt to talk with the trial court however, until two days prior to the actual first trial. Chaze telephoned the trial judge at 10:00 p.m. at the judge's home. The judge advised Chaze of the trial setting. The record also reveals that Cosnahan, Chaze, and the district attorney had several conversations during this same time frame about Chaze's conditional willingness to represent Lambert. The record indicated Chaze was only willing to represent Lambert, not that he had been hired by Lambert. Lambert never hired Chaze as his new attorney.
The willingness by Chaze to take the case was conditioned upon a continuance, to which the district attorney would not consent. Subsequently, the trial judge would not agree to allow a continuance under such substitution of attorneys at the "last minute." More importantly, according to Cosnahan, Lambert did not even attempt to contact Chaze about representation until Monday by telephone, followed by a personal visit to Chaze's office on Tuesday, only two days prior to the trial setting. Although told of the setting by the trial judge, Chaze did not appear and the court required appointed counsel Cosnahan to proceed with trial.
Additionally, Lambert has not demonstrated how he was prejudiced. Lambert testified, denying the allegations made against him by the young female children, and his counsel cross-examined each of the witnesses who testified against him in the State's case in chief.
Neither has Lambert filed any affidavits within the record concerning any absent witnesses and facts to be proven by their testimony or documentation not presented, but essential or crucial to his defense as clearly required by Miss. Code Ann. § 99-15-29 (Supp. 1972). The record is totally devoid of such required proof. This Court has stated in Pool v. State, 483 So.2d 331 (Miss. 1986) that:
Pool's motion failed to meet the procedural requirements enunciated in § 99-15-29. Pool did not set forth the facts to be proved by his absent witness, nor did he offer any proof as to his attorney workload. Even if Pool could get over this procedural hurdle, the long standing rule is that trial judges have great discretion in granting or denying continuances.
Id. at 336.
Lambert failed to follow the statutory requirements for offering proof to support his allegations that more time was required for trial preparation. The trial judge was obviously *26 and correctly concerned that Lambert was represented by counsel Cosnahan at a preliminary hearing four months previous to the trial date, was out on bond during this time and waited until two days prior to trial to attempt to hire a different lawyer. This entire scenario borders closely on an attempt at "sandbagging" the court by the defendant Lambert. Harrison, Johnson, Byrd, Shaw and Pool clearly apply to the case sub judice. Lambert has not shown that the trial judge abused his discretion in denying his continuance. Cosnahan was apparently an experienced trial attorney who we conclude from this record zealously defended Lambert's interest.
Cosnahan did the best that he could with a client who had not cooperated very well since his preliminary hearing. Lambert should not succeed at securing another trial when his own actions or inaction created the problem he complained of on appeal to this Court.
I respectfully dissent.
HAWKINS, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] The names or initials of the minor children involved have been changed to protect their identities.