726 So.2d 264 (1998)
Jermaine PROBY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01368 COA.
Court of Appeals of Mississippi.
December 30, 1998.
*265 Lisa D. Jordan, Natchez, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE THOMAS, P.J., COLEMAN AND HINKEBEIN, JJ.
THOMAS, P.J., for the Court:
¶ 1. Jermaine Proby appeals his conviction of sale of cocaine, raising the following issues as error:
I. THE TRIAL COURT ERRED IN DENYING PROBY'S MOTION FOR A CONTINUANCE.
II. THE TRIAL JUDGE ERRED IN FAILING TO RECUSE HIMSELF UPON MOTION OF PROBY.
III. THE VERDICT OF THE JURY WAS NOT UNANIMOUS AS ONE JUROR INDICATED THAT IT WAS NOT HER VERDICT DURING THE JURY POLL.
IV. THE TRIAL COURT ERRED IN ALLOWING THE STATE'S WITNESSES TO TESTIFY WHEN THE LIST OF WITNESSES WAS NOT FURNISHED TO DEFENSE AS REQUIRED BY THE RULES, OR IN THE ALTERNATIVE, NOT GRANTING PROBY'S MOTION FOR A CONTINUANCE.
V. THE TRIAL COURT ERRED IN SUSTAINING OBJECTIONS MADE BY THE STATE DURING THE CROSS-EXAMINATION OF THE CONFIDENTIAL INFORMANT, JOHN DELAUGHTER.
VI. THE TRIAL COURT ERRED IN FAILING TO STRIKE THE TESTIMONY OF AGENT KYLE WILSON AS IT WAS CLEARLY TAINTED IN VIOLATION OF THE WITNESS RULE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On June 21, 1996, Richard Jones, an officer of the Natchez Police Department and an agent of the Metro Narcotics Task Force, *266 attended a pre-buy meeting with Kyle Wilson, another officer of the Natchez Police Department and an agent of the Metro Narcotics Task Force. Also present at this meeting was John Adrian DeLaughter, a confidential informant employed by the Task Force. This meeting was arranged to specifically target street level drug dealers in the area of Hutchin's Landing Road and Lower Woodville Road, in Natchez, Mississippi. The Task Force specifically targeted a club in the area known as the Ponderosa Club.
¶ 4. DeLaughter and his vehicle were searched by Agent Wilson. DeLaughter was given $70 in marked currency. Agent Jones installed video and audio equipment in DeLaughter's vehicle. In this way the agents could hear any conversations taking place in or near DeLaughter's vehicle plus a video recording would be made of anyone coming up to the driver's side of DeLaughter's vehicle. The two agents followed behind in their own vehicle as DeLaughter drove to the area in question. As the agents waited in the parking lot of an old service station, DeLaughter proceeded on to the Ponderosa Club. However, since no one was at the club, DeLaughter met back up with the agents. The decision was made that DeLaughter would travel north on Lower Woodville Road and try to purchase drugs in that area.
¶ 5. As DeLaughter traveled on Lower Woodville Road, he recognized Jermaine Proby on the side of the road standing next to a house. DeLaughter stopped and told Proby he wanted to purchase $50 worth of crack cocaine. Proby informed DeLaughter that he would have to go back to his house to get the crack cocaine. An arrangement was made where Proby and DeLaughter would meet at the corner of Lower Woodville Road and Cloverdale Road. DeLaughter arrived first at the designated area. He waited about ten minutes before Proby showed up. Proby handed DeLaughter the crack cocaine, and DeLaughter gave Proby $50. Proby insisted on $70 for the crack cocaine. DeLaughter gave him another $20 and drove away.
¶ 6. DeLaughter drove to Agent Wilson's house. The agents retrieved the crack cocaine and the videotape. Several weeks later an indictment was handed down against Proby. The indictment charged Proby with the sale of cocaine, enhanced by selling in a church zone, enhanced by a second subsequent offense, and further enhanced as a result of recidivism. Proby was thereafter arrested and tried on November 26, 1996.
¶ 7. Before the jury was selected, Proby made a motion for the trial judge to recuse himself. Proby alleged that a conflict existed as the trial judge was still working for the district attorney's office when Proby was convicted of a charge upon which the State relied for enhancement under both the second subsequent offender and recidivism statutes. The State decided to drop the habitual offender portion of the indictment and asked for leave to amend the indictment to charge Proby as a second subsequent offender not with the offense originally charged in the indictment, but with an offense in which the trial judge was no way involved. The motion to amend was taken under advisement but was eventually denied during sentencing. The case then proceeded to trial.
¶ 8. At the close of the State's case Proby made a motion for a directed verdict. The motion for directed verdict was granted with respect to the sale of cocaine within 1500 feet of a church. Proby did not testify, and the defense rested. Proby was found guilty of selling a controlled substance and sentenced with no enhancements to thirty years in the custody of the Mississippi Department of Corrections. Feeling aggrieved, Proby effectuated this appeal.

ANALYSIS

I.

THE TRIAL COURT ERRED IN DENYING PROBY'S MOTION FOR A CONTINUANCE.
¶ 9. Proby filed a motion for a continuance the day before trial based largely upon an inadequate time to prepare for trial and specifically that since the defense was not given access to the video shot the night of the buy until five days before trial more time was needed to prepare a defense. A pre-trial hearing was held taking up the motion. At *267 the hearing, Proby protested the fact that despite diligent effort the tape was not seen by the defense until five days before trial. Furthermore, that upon seeing the tape the defense needed more time to make a motion to suppress the tape, to make a motion to limit irrelevant things on the tape, and to measure the distance from where the buy took place to the church. The continuance was denied, but the trial judge promised to exclude any type of "loose" conversation on the tape. Proby now argues that the trial judge abused his discretion in not granting the continuance. Proby asserts that he was only given one opportunity to view the video tape some five days before trial despite discovery requests filed more than two months before trial. According to Proby, the failure of the State to allow complete access to the tape and in a timely manner greatly prejudiced his ability to prepare a defense, especially to the charge of the sale of a controlled substance within a church zone.
¶ 10. Miss.Code. Ann. § 99-15-29 (Rev.1994) provides that a court "may grant or deny a continuance, in its discretion," and that a denial of a continuance "shall not be grounds for reversal unless the Supreme Court shall be satisfied that injustice resulted therefrom." In order for us to reverse, Proby must show that a manifest injustice resulted from the denial of the continuance. Lambert v. State, 654 So.2d 17, 22 (Miss. 1995). Also, under URCCC 9.04(I) if evidence has not been timely disclosed by the prosecution the court may, in the interest of justice, exclude the evidence, grant a continuance, or grant a mistrial.
¶ 11. We hold that the trial judge did not abuse his discretion in this instance as the tape was timely disclosed. The record reflects that over a two month period before trial the State allowed access to the tape but for various reasons attributable to both the defense and the State the video was not seen by the defense until five days before trial. However, the fact remains that the defense had access to the tape. Furthermore, the defense was able to view the tape before trial and a copy of the video was given to the defense the day before trial. The record further reflects that the defense was able to extensively study the transaction on the tape before trial.
¶ 12. Moreover, no prejudice resulted to Proby as a result of the denial of his motion for a continuance. The charge of selling a controlled substance within a church zone was dismissed on directed verdict. Also, the record shows the trial judge was true to his word and excluded certain conversations on the tape. Proby has failed to show any "manifest injustice" resulting from the denial of the continuance.

II.

THE TRIAL JUDGE ERRED IN FAILING TO RECUSE HIMSELF UPON MOTION OF PROBY.
¶ 13. Proby argues the trial judge was in error for failing to recuse himself since the trial judge was working for the district attorney's office when Proby was convicted of an early drug charge. The charge was then used for enhancement under both the second subsequent offender and habitual offender statutes. We hold the trial judge did not err in not recusing himself. The record clearly reflects the fact the trial judge in this case was both unbiased and impartial. Any connection the instant case had with the previous drug conviction was severed when all attempts at enhancement were either dropped by the State or disallowed by the trial judge. This issue is without merit.

III.

THE VERDICT OF THE JURY WAS NOT UNANIMOUS AS ONE JUROR INDICATED THAT IT WAS NOT HER VERDICT DURING THE JURY POLL.
¶ 14. After a guilty verdict was returned, the trial judge polled the jury to make sure the verdict was unanimous. The following exchange took place:
BY THE COURT: Now, ladies and gentlemen, under the law, it's necessary that I just make inquiry to make certain that the verdict of the jury is unanimous and, sir, I'm going to start at the back and as I point to you, if you'll just *268 indicate to me if this is your verdict by a nod of the head or yes or let me know and if it is not, let me know likewise.
(After several affirmative answers and nods, the following was made of record, to-wit:)
BY JUROR BACON: It's my verdict, but I do have some questions later on, some things I need to talk to
BY THE COURT: Well, ma'am, my question to you at this point is this your verdict?
BY JUROR BACON: Right.
¶ 15. Proby argues that the verdict was not unanimous. He asserts the trial judge should have allowed the juror to express her feelings to ascertain whether she had questions concerning the verdict and because this was not done a reasonable doubt was created as to whether that was actually her verdict.
¶ 16. At the time of this exchange no objection was made. The jury was allowed to retire before Proby made a motion for a JNOV based on the fact the one jury had reservations about the verdict. We hold that in this instance Proby failed to make a contemporaneous objection at trial and thus this issue is procedurally barred. Ballenger v. State, 667 So.2d 1242, 1259 (Miss.1995) (citing Chase v. State, 645 So.2d 829, 835 (Miss. 1994); Cole v. State, 525 So.2d 365, 369 (Miss. 1987); Irving v. State, 498 So.2d 305 (Miss. 1986); Cannaday v. State, 455 So.2d 713, 718-19 (Miss.1984)). In any event, a plain reading of the exchange clearly shows that Juror Bacon concurred in the verdict. Furthermore, any doubt of Juror Bacon's verdict was dispelled when the trial judge denied the motion for JNOV:
BY THE COURT: Let the record show that the Court upon the verdict being returned to the Court on its own initiative polled the jury. One juror indicated she had some reservations about something. I do not know whator seemed to indicate that she wanted to talk to the Court about something. At that point, theat first she had nodded her head that that was herit was her vote. That was her verdict. The Court again inquired of her to make certain there was no reservation or no hesitation about the verdict, and she replied a second time on direct questioning from the Court that it was, in fact, her verdict. I do not recall exactly the words that were spoken, but it seemed to be athat she desired to talk, I take it, to the Court as where she seemed to turn to about something about this case. But she was asked once about the verdict, stated it was her verdict, and the Court out of caution questioned her again to make certain and she expressed very clearly to the Court that that was, in fact, her verdict although it seemed to indicate that she did want to speak to the Court about something, about what I know not. But it was clear to the Court that this was her verdict. So let the record show that the Court is going to overrule the motion for a verdict for the defendant not withstanding the verdict of the jury.
BY MS. JORDAN: And, your Honor, can we note for the record that the juror seemed to be distressed at the time that she spoke to the Court.
BY THE COURT: No, ma'am. I want the record to reflect that this is the Court's standard policy to poll the jury on its own initiative. When I receivedwhen I got to this juror, she did, in fact, nod affirmatively as I was asking each of the jurors whether or not this was their verdict. She did indicate something spoken that she had something on her mind. It was at this point that the Court inquired again to this woman. I looked directly at the woman. I inquired very clearly, and, for the record, it's the Court's finding and opinion that at that time the woman expressed no reservation whatsoever about the verdict being hers. That's specifically what I was inquiring of her, but it did seem that she wanted to talk to the Court about something. So that's twice that the woman indicated to the Court that it was her verdict. The second time, I will state for the record, the Court was looking directly at her and the Court feels like it was a very clear and unequivocal statement that this was her verdict, but again there was some feeling on her behalf that she wanted to speak to the Court about something.

*269 So let the record so reflect and let the record show that the motion is overruled.

IV.

THE TRIAL COURT ERRED IN ALLOWING THE STATE'S WITNESSES TO TESTIFY WHEN THE LIST OF WITNESSES WAS NOT FURNISHED TO DEFENSE AS REQUIRED BY THE RULES, OR IN THE ALTERNATIVE, NOT GRATING DEFENDANT'S MOTION FOR A CONTINUANCE.
¶ 17. Proby made an objection before trial on the grounds that the State failed to provide a detailed list of the names and addresses of the witnesses to be called by the State as required by URCCC 9.04(A)(1). Proby now asserts that he was not given information about DeLaughter until the day before trial despite discovery requests made in September 1996. Proby was then only afforded a last minute interview with DeLaughter at the courthouse witness room. Proby avers that he was greatly prejudiced by this failure to timely provide him information about the whereabout of the informant. Proby further assets the trial judge erroneously failed to exclude the witnesses of the State for failing to provide their names and addresses in a timely manner, or in the alternative, a motion for continuance should have been granted.
¶ 18. The record reflects that all potential witnesses were timely disclosed by the State to the defense in various discovery requests, such as lab reports, official court files, and the indictment itself. However, a written detailed list of witnesses with addresses was not furnished. Even if we were to consider this a discovery violation, we hold as harmless error this failure as no prejudice resulted from it.
¶ 19. On appeal Proby avers he was prejudiced by the alleged discovery violation because he was not able to interview DeLaughter until the day before trial, and this prejudice was further evidenced by the fact that there was no consistency between DeLaughter's testimony on the stand and the information provided in the interview. However, this is the only witness Proby points to, and he does not even attempt to allege any prejudice as a result of any other of the State's witness who testified. The record reflects that fact that Proby was able to extensively examine DeLaughter before trial as evidenced in the cross-examination of DeLaughter:
Q. Good afternoon, Mr. DeLaughter.
A. How are you doing?
Q. So we meet again.
A. Yes.
Q. You and I talked for a long time yesterday, didn't we?
A. Right.
Q. And I asked you a lot of questions about what had happened on July 21st of this year?
A. Yes, ma'am.
Q. And is it a fair statement that you and I talked in detail about this case?
A. To the best of my ability.
¶ 20. Defense counsel then proceeded to cross-examine DeLaughter in great detail and in great length. The jury was made amply aware of the inconsistencies between DeLaughter's two examinations. If anything, these inconsistencies actually strengthened Proby's case as such inconsistencies went to the credibility of the State's main witness. Since no prejudice resulted to Proby, this issue is without merit.

V.

THE TRIAL COURT ERRED IN SUSTAINING OBJECTIONS MADE BY THE STATE DURING THE CROSS-EXAMINATION OF THE CONFIDENTIAL INFORMANT, JOHN DELAUGHTER.
¶ 21. Proby argues that the trial judge erroneously sustained objections by the State pertaining to the informant's use of crack cocaine after the time he was working with the Task Force. Proby asserts this was relevant evidence that should have been allowed. Proby points to the following exchange where the trial court sustained the State's objection:
Q. When was last time you have used crack cocaine? *270 A. I don't know the exact date.
Q. Has it been since you made these deals in June?
BY MR. WARD: Your Honor, I am going to object. We've been over and over and over.
BY THE COURT: I am going to sustain. This has been covered lengthy, lengthy detail previously. Let's go ahead and proceed on.
BY MS. JORDAN: Your Honor, if I may respond, all my questions are
BY MR. HARPER: Your Honor, I'm going to object to her making statements in front of the jury. If she wants to talk
BY THE COURT: Sit down. Sit down, Mr. Harper. Now, Ms. Jordan, I have sustained as to this question has already been asked and answered and we've gone over it extensively about when the last time that this man says he smoked crack cocaine. Now, let's go ahead and proceed on.
¶ 22. Proby claims the previous questions were concerning drug use prior to working with the Task Force, and therefore, the trial judge was in error to sustain the objection on the fact that it had already been covered. The cross-examination of DeLaughter by Proby's counsel at trial was both lengthy and comprehensive. Trial counsel fully explored DeLaughter's drug use before and after he worked for the Task Force. The trial judge was proper in sustaining the State's motion in this instance.

VI.

THE TRIAL COURT ERRED IN FAILING TO STRIKE THE TESTIMONY OF AGENT KYLE WILSON AS IT WAS CLEARLY TAINTED IN VIOLATION OF THE WITNESS RULE.
¶ 23. Proby argues that the trial judge erred in failing to grant his motion to strike the testimony of Agent Wilson on the basis of an alleged violation of the witness sequestration rule. In its case-in-chief the State called a total of four witnesses. The witnesses for the State were called in the following order: Jacqueline Gardner (State's laboratory analyst), Agent Jones, DeLaughter, and Agent Wilson. Both Agent Jones and DeLaughter testified that no other transactions took place that night. However, on cross-examination of Agent Wilson it was discovered that DeLaughter purchased drugs earlier from someone at the Ponderosa Club. Agent Wilson was then called back on re-direct and explained that he was prohibited from talking about other cases but that in fact another buy had taken place.
¶ 24. At no time before or during Agent Wilson's testimony did Proby make an objection based on a violation of the sequestration rule. Proby did not move to exclude Agent Wilson's testimony until after both the State and defense had rested. At that time the following exchange took place:
BY MS. JORDAN: I do. I have one objection that I guess it'syou'd put it in the form of an objection or a motion to suppress the testimony of Kyle Wilson in that it was discussed with other witnesses that had previously testified when the Rule had been invoked and the witness was to be excluded and he was prepared based on testimony that had already been given in the courtroom to come back and specifically address almost word for word and verbatim the exact same testimony, and we would submit that his testimony was tainted and that it should be suppressed by the Court.
BY THE COURT: The Court notes that therefor the record this being out of presence of the jury that there were certain inconsistencies, certainly I'm going to state at this point that were brought out by the examination by defense counsel of the various witnesses. One of the primary ones to the Court being of whether or not another transaction or sale took place on the date in question. The Court recalling that the witness John DeLaughter basically testified that there were no other transactions that day or sales that he made, and I believe there was also 
BY MS. JORDAN: Agent Jones testified.
BY THE COURT:Agent Jonesalthough it was gone in less detail but heit was basically the Court's recollection about *271 his testimony that that was the situation and I believe what you're referring to is that the fact that the Agent Kyle Wilson has testified that there was, in fact, another his testimony is that there was another transaction prior to the alleged one in question in this case being that it allegedly took place at approximately 7:18. This coincides with the cross-examination of theby defense counsel concerning the charge against Joseph Williams, I believe. The case number escapes me but the Court read into the record at that point that there was, in fact, an indictment for the same date alleging that the same John DeLaughter made a purchase from Joseph Williams which is apparent that was same testimony that was elicited from Kyle Wilson. So the Court does note those inconsistencies but the Court will overrule any motion at this point or what to strike the testimony of Kyle Wilson as such on that basis.
BY MS. JORDAN: Or can we strike his testimony as the same relates to that? What really concerns me now is that on re-cross Mr. Harper comes back to show that they did go make this sale. That two witnesses denied it did not happen and then they went back where a sale was not made and then they go out here to Jermaine Proby, which I guess all goes to credibility and probative value but I strongly feel like that testimony is tainted in that it was prepared based on testimony already presented in the courtroom.
BY THE COURT: Well 
BY MR. WARD: That's what happened, your Honor.
BY THE COURT: Just a second. The Court is going to state this. Again, I am overruling the basic objection on that basis to throw out the testimony, it being the Court's feeling the testimony of Kyle Wilson does seem to coincide more so with the actual case file that was brought out and brought into evidence, but let the record show that I am overruling that objection on that basis.
¶ 25. Following this discussion, Proby did not attempt to recall any of the State's witnesses to delve deeper into his allegations. Proby now claims on appeal that during the course of Agent Wilson's testimony it became obvious that he was made aware of and prepared for matters on cross-examination which were answered vaguely and untruthfully by Agent Jones and DeLaughter. According to Proby, the testimony of both Agent Jones and DeLaughter was successfully impeached by the defense until Agent Wilson came forward with a simple explanation of the contradictions in testimony for which he was informed and prepared. Proby maintains that Agent Wilson was obviously informed of defense questions challenging the credibility of prior witnesses and prepared a response to the same to bolster his testimony.
¶ 26. Our supreme court has delineated the reasons behind the sequestration rule and the proper procedure to be followed for its violation:
M.R.E. 615 provides that, at the request of a party, the court shall order witnesses excluded from the courtroom so that they cannot hear the testimony of other witnesses. Often called "the rule," the witness exclusion rule serves to discourage a witness's tailoring his testimony to what he has heard from the stand and the rule serves to facilitate exposing false testimony. Powell v. State, 662 So.2d 1095, 1097-98 (Miss.1995) (citing Baine v. State, 606 So.2d 1076, 1083 (Miss.1992); Moffett v. State, 540 So.2d 1313, 1317 (Miss.1989); Doby v. State, 532 So.2d 584, 589 (Miss. 1988)). Remedies for violations include prohibiting the witness from testifying, striking his testimony, citing him for contempt, or allowing a "full-bore" cross-examination. Gerrard v. State, 619 So.2d 212, 217 (Miss.1993). It is within the trial judge's discretion to determine what remedy is appropriate. Baine v. State, 606 So.2d 1076, 1083 (Miss.1992).
Brown v. State, 682 So.2d 340, 347 (Miss. 1996).
¶ 27. The record before us is not clear on whether or not Agent Wilson violated "the rule." Additionally, on appeal Proby has in essence cited to nothing in the record evidencing a violation. Proby merely states that it was "obvious" that Agent Wilson violated *272 the sequestration rule and only points to the defense's motion to exclude his testimony related above as evidence.
¶ 28. We hold the trial judge did not err in denying the motion to exclude Agent Wilson's testimony. There was not enough evidence presented with the motion which would warrant exclusion of the testimony. Furthermore, a thorough examination of the record has turned up no evidence suggesting a violation of the sequestration rule. Moreover, no undue prejudice has been shown to have resulted from Agent Wilson's testimony. Agent Wilson's testimony in fact most likely helped Proby as inconsistencies were brought out going to the credibility of most of the State's witnesses.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF SALE OF A SCHEDULE II CONTROLLED SUBSTANCE COCAINE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.