# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00613-SCT

*ANTONIO PARKER a/k/a ANTONIA M. PARKER*
*a/k/a ANTONIA MEDEAL PARKER*
*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2020 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| TRIAL COURT ATTORNEYS: | ANGELA MARIE HUCK |
| | KEITH BENNETT ALEXANDER |
| | JOHN D. WATSON |
| | JESSICA MASSEY CARR |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ERIN ELIZABETH BRIGGS |
| | ZAKIA BUTLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    A jury found Antonio Parker guilty of domestic-violence-based aggravated assault and kidnapping.[1] On appeal, he argues that the trial court wrongly denied him a continuance of his trial and that he received ineffective assistance of counsel. After review, we find he has shown neither error nor resulting prejudice from the trial court's denial of his fourth requested continuance. And he has not proved his counsel was constitutionally deficient. We affirm.

### Background Facts and Procedural History

¶2.    In July 2018, Felicia Brown was working as a housekeeper at a hotel in Olive Branch, Mississippi. In the early morning hours, she received numerous threatening text messages from her ex-boyfriend, Parker. While she was at work, Parker texted her, telling her he was on his way to the hotel. Though she asked him not to come, Parker still showed up. Once there, he told Brown to come outside. After a few minutes, she met him in the parking lot.

¶3.    When Brown walked outside, Parker grabbed her by her neck and forced her into the driver's side of his vehicle. Parker then locked the car doors and drove off with her. Parker choked Brown at least three times. These assaults took place while she was in the car and when Parker later stopped at a gas station. Brown could not escape. And when Brown pleaded for Parker to take her back to the hotel, he told her he planned to keep her for a few days. But after she convinced him her mother would be looking for her, Parker relented and returned her to the hotel.

---

[1] Parker's name in court documents varies between Antonio and Antonia.

¶4. Brown reported Parker's actions to the police the next morning. In April 2019, a grand jury charged Parker with domestic-violence-based aggravated assault and kidnapping. A few months later, on June 10, 2019, Parker requested a continuance. His cited purpose was to hire his own attorney. The trial court granted his request. On July 12, 2019, Parker was granted a second continuance until August 16, 2019, to try to secure his own counsel. When that date arrived, Parker had not hired an attorney, so the court appointed him one. On November 18, 2019, Parker asked for a third continuance to again find his own counsel. And the judge continued his trial once more.

¶5. On February 6, 2020, a little less than three weeks before his trial date, Ben Alexander entered an appearance as Parker's defense attorney. At a pretrial status hearing that same day, Alexander asked the judge for what would have been Parker's fourth continuance. As Alexander put it, he "belatedly request[ed] a continuance, fully understanding that it is set for trial." Recognizing the tardiness of his request, he emphasized to the judge that he was "prepared to go forward" with trial if a continuance was denied. The judge denied Parker an additional continuance. And his trial began February 26, 2020. The jury convicted Parker of both counts, and the judge sentenced him to two terms of twenty years in custody to be served concurrently followed by ten years of post-release supervision. He now appeals.

**Discussion**

¶6. On appeal, Parker argues (1) the trial court wrongly denied his February 6, 2020 motion for continuance, which prejudiced him at trial, and (2) he received ineffective

3

assistance of counsel.

### I. Alleged Error and Prejudice from the Denial of the February 6 Request for Continuance

¶7. Parker pushes a two-fold argument concerning the judge's denial of his fourth continuance request. He suggests the judge's decision was erroneous and the denial resulted in his lawyer's being unprepared, thus violating his Sixth Amendment right to effective assistance of counsel. *See* U.S. Const. amend. VI. We disagree.

¶8. Defendants bear a heavy burden when claiming a denied continuance should result in reversal of a jury's verdict. That is because "[t]rial judges have wide latitude in deciding whether to grant continuances[.]" *Miles v. State*, 249 So. 3d 362, 368 (Miss. 2018) (citing *Lambert v. State*, 654 So. 2d 17, 22 (Miss. 1995)). The ultimate decision "is left to the sound discretion of the trial judge." *Id.* (citing *Lambert*, 654 So. 2d at 22). This Court will only reverse a trial judge's denial of a motion to continue a trial if manifest injustice results. *Payton v. State*, 897 So. 2d 921, 931 (Miss. 2003). Parker's claim falls far short. The record shows this was Parker's fourth motion for a continuance. The trial judge had already given him three previous continuances, on each occasion granting him additional time to secure private counsel. And it was Parker who hired Alexander twenty days before trial; the court did not appoint him. This is pertinent because "the *voluntary* substitution of counsel prior to trial is not, of itself, grounds for a continuance." *Speagle v. State*, 390 So. 2d 990, 992 (Miss. 1980) (emphasis added) (citing *Ladnier v. State*, 273 So. 2d 169, 172 (Miss. 1973)). Actual proof of the necessity for a continuance is required. *Ladnier*, 273 So. 2d at 172. Our

4

law is clear that "a motion for continuance upon the ground that an attorney has not had sufficient time to prepare for trial is subject to proof and also as to facts as they may appear from that which is known to the trial court." *Barnes v. State*, 249 So. 2d 383, 384 (Miss. 1971). But no facts or proof were presented here. In fact, when Parker did hire private counsel—almost three weeks before the scheduled trial—his lawyer assured the judge that if the continuance was denied, "I'm prepared to go forward." It is obvious the trial judge did not abuse her discretion by denying the continuance—her denial was reasonable.

¶9.     Parker also seems to urge his attorney's insufficient preparation prejudiced his trial. Yet he offers nothing to support this notion either. To prove ineffective assistance of counsel, Parker must prove his counsel's performance was (1) deficient, and (2) the deficiency was so substantial it prejudiced him, depriving him of a fair trial. *Dartez v. State*, 177 So. 3d 420, 423 (Miss. 2015) (citing *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). "An allegation of ineffective assistance of counsel for failure to properly prepare must state whether any additional investigation, such as interviewing witnesses or investigating facts, would have significantly aided or altered the outcome of the defendant's case at trial." *Graves v. State*, 216 So. 3d 1152, 1159 (Miss. 2016) (quoting *Benson v. State*, 821 So. 2d 823, 827 (Miss. 2002)). Parker wholly fails to provide, much less prove, any facts that show his trial attorney's supposed rushed preparation prejudiced him. In short, he has not shown a continuance would have changed the outcome or undercut Brown's testimony

5

that Parker repeatedly choked her while keeping her captive in his vehicle.

¶10.    Because there was no error or manifest injustice, this claim lacks merit.

## II.    Strategy-Based Ineffective-Assistance-of-Counsel Claim

¶11.    Parker next asserts a more traditional ineffective-assistance-of-counsel claim.  This claim is based on his lawyer's trial tactics, which likewise fall under the deficiency and prejudice test from *Strickland*.  466 U.S. at 687-96.

¶12.    During Brown's cross-examination, defense counsel asked Brown if she had "ever see[n] [Parker] act that crazy before[.]"  She responded with an answer Parker's counsel had apparently not expected.  Brown testified that the previous weekend she and Parker "had got into an argument, and we was arguing, and he slapped [her] down."  Parker cites this unintentional introduction of his other "bad act" as proof of his attorney's deficient and prejudicial performance.

¶13.    More than a century ago, New York attorney Francis Wellman put to print the long-held notion that "a lawyer should never ask a witness on cross-examination a question unless in the first place he knew what the answer would be, or in the second place he didn't care."  Francis Wellman, *The Art of Cross Examination* 44 (1903).  This general truth has played a prominent role as an oft-cited non-negotiable in the art of advocacy by those schooled by experience and practice in our courtrooms.  Cornell University Law Professor Irving

6

Younger even deemed it the *"Fourth Commandment* of Cross Examination."[2] While Parker's counsel's question and Brown's resulting response may illustrate the wisdom of this general courtroom truth, our test in assessing the effectiveness of counsel is not centered on what Wellman or Younger would do. Rather, this Court must evaluate the challenged conduct from this particular attorney's perspective. And it must do so against the backdrop that "[c]ounsel's choice of whether to . . . ask certain questions falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." **Bell v. State**, 879 So. 2d 423, 434 (Miss. 2004) (citing **Jackson v. State**, 815 So.2d 1196, 1200 (Miss. 2002); **Cole v. State**, 666 So. 2d 767, 777 (Miss. 1995)). Viewing the circumstances as they existed at the time, this Court makes "every effort . . . to eliminate the distorting effects of hindsight" and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" **Strickland**, 466 U.S. at 689.

¶14. Here, the State's evidence pushed hard against Parker, and his defense counsel apparently had very little to work with. In an attempt to discredit the victim, defense counsel simply got an answer that he did not prefer. This happens every day in courtrooms around this country. But the bottom line is that his questioning was part of his strategy to impeach Brown—something we cannot second guess. Based on the overwhelming evidence of Parker's guilt, which included victim testimony, a hotel video of the abduction, photographs

---

[2] "Don't ask a question to which you do not know the answer." Irving Younger, *Trial Techniques* (Robert E. Oliphant, ed., 1st ed. 1978).

7

of her injury, and a host of threatening texts to her, this trial exchange did not affect the outcome.

¶15.    Parker also takes issue with his attorney's examination of Officer Triplett about a second video—an alleged video recorded from the gas station where he brought Brown. But this too falls under trial strategy. This supposed video was not presented at trial or played for the jury. According to Officer Triplett, he could not retrieve the video from the gas station. So he captured the video's contents using a video feature on his department cell phone. But when he was transferred to the patrol division, he turned in his department cell phone, thus losing the video. Parker's attorney seized on the "missing video." And he questioned Officer Triplett repeatedly about the purported video, which Triplett claimed showed Parker striking Brown. Parker's attorney honed in on department procedure, evidence handling, and Triplett's transition from detective to patrolman. He probed Officer Triplett about the video's being "lost," emphasizing that the jury would never see this alleged recording.

¶16.    Again, this challenge is based on Parker's second guessing his attorney's trial strategy, a strategy aimed at discrediting Officer Triplett. This questioning did not show his attorney was deficient, nor did it result in Parker's being deprived of a fair trial.

### Conclusion

¶17.    We affirm the trial court's judgment.

¶18.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**