471 So.2d 1218 (1985)
Harold David BARNES
v.
STATE of Mississippi.
No. 55425.
Supreme Court of Mississippi.
June 5, 1985.
*1219 Travis Buckley, Dan C. Taylor, Ellisville, Thomas E. Royals, Royals & Hartung, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:
For the second time within a year Harold David Barnes appeals to this Court from a judgment of conviction entered by the Circuit Court of the Second Judicial District of Jones County, Mississippi, this time a conviction of the crime of murder. Once again, because the Circuit Court failed to enforce discovery rules found in Rule 4.06 of our Uniform Criminal Rules of Circuit Court Practice, we reverse and remand. See Barnes v. State, 460 So.2d 126, 133-135 (Miss. 1984).
The context is set by that portion of Rule 4.06 which reads:
Upon request of defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness' testimony, the statement shall be supplied to defense counsel prior to cross-examination.
At trial, the principal state witness for the prosecution was Willard Donald Knight. On direct examination, Knight described several months of advance planning by Barnes directed toward the murder of Barnes' wife, Beverly. The basic motif was a faked automobile accident. Various options were considered and discarded. Finally, Knight testified that on Easter afternoon, April 7, 1980, Barnes came to his house and said "Be ready to go tonight". Barnes came back at approximately 10:30 p.m. From this point forward Knight described in meticulous detail his going to Barnes' house, helping get Beverly's body into a car and then helping to stage the wreck. Without question, Knight's testimony was the star attraction in the case for the prosecution. His credibility was likely outcome-determinative in the jury's mind.
On cross-examination, Knight was asked if he had previously talked with police officers. After some questions, the existence of three prior witness statements was disclosed. Defense counsel then invoked Rule 4.06 and moved for production of all prior statements given by the witness Knight to determine "whether or not there were any contradictory statements given"[1]. Five statements were produced. These are:
(1) a typewritten question-and-answer interview of Knight by law enforcement officers given December 28, 1982, being 17 pages in length,
(2) another typewritten question-and-answer interview of Knight by law enforcement officers, this one given December 29, 1982, and being four pages in length,
(3) a narrative statement given by Knight and signed by him on March 17, 1983, being two pages in length,
(4) a typewritten question-and-answer interview of Knight by law enforcement officers given March 17, 1983, being 33 pages in length,
(5) a final typewritten question-and-answer interview of Knight by law enforcement officers, this time of March 21, 1983, being 21 pages in length.
The trial judge then examined the five statements in camera and thereafter denied Barnes' request, announcing "that there is nothing exculpatory in the statements". Barnes' counsel asked that the record reflect that the purpose of his request was not merely to obtain exculpatory materials but also for the purpose of cross-examining the witness with respect to conflicts between what the witness had said in the *1220 statements and his testimony in open court. The trial judge never ruled on whether there were conflicts in the statements or between the statements and the testimony of Knight given up to that point at trial.
The statements were then placed in sealed envelopes and made a part of the record on appeal. We presume that the statements have to this day not been seen by counsel for Barnes. Upon our examination, we find the following discrepancies in the various statements, when compared to Knight's trial testimony:

(1) The statement of December 28, 1982,

(a) throughout this statement Knight insists that he was on drugs (Talwain) and drinking and that he does not have a very good memory of what happened on Easter night, while on direct examination and trial he appeared to have a very vivid memory.
(b) Knight said he went over to Barnes' house on Easter night and Beverly met him at the door. (p. 4) On the witness stand Knight said the first time he saw Beverly that night she was in the bathroom and already dead.
(c) Knight repeated the statement that he saw Beverly that night alive and that she came to the door. (p. 6)
(d) Knight was asked point blank if he knew anything about Beverly's death and if he had anything to do with killing her and his answer on each occasion was a categorial "No, sir". (p. 7) Knight's substantially contrary trial testimony has been described above.
(e) Knight was asked if Harold Barnes killed Beverly Barnes and said he did not know. (p. 9) At trial on direct examination Knight said that Barnes did kill Beverly.
(f) Knight was asked if he helped bring Beverly Barnes' body out of the house and answered, no, he did not. (p. 9) At trial on direct examination Knight testified that he did assist Barnes in removing Beverly's body from the house.
(g) Knight was asked if the wreck was just staged and answered that he did not know. (p. 10) At trial on direct examination Knight testified that he participated in staging the wreck.

(2) The statement of December 29, 1982

(a) He "was plastered up back then". (p. 2) On direct examination at trial Knight had a very vivid memory.
(b) Knight was not nearly as sure he had been at the Barnes' house on Easter night. "I was down there one night; I don't know which one". (p. 1) Knight also said "I don't know whether I was [at the Barnes house] or not". (p. 1) This was a variance from the statement Knight had made the day before and was also at substantial variance with the trial testimony of Knight to the effect that he was definitely at the Barnes house on Easter night.

(3) The narrative statement of March 17, 1983

There is one major discrepancy between this statement and Knight's trial testimony. In the statement Knight says that he had no advance knowledge about any plan to kill Beverly Barnes. In fact, he did not know that she was going to be in the staged wreck until he saw her dead in the bathroom at 2:00 a.m. on Easter night and Barnes asked him to help carry her body out of the house. In this statement Knight never admits that he knew Barnes had murdered his wife. This is in contradiction to his direct testimony at trial.

(4) The narrative statement of March 17, 1983

This statement is quite lengthy. Again the major discrepancy is that Knight is very positive that he had no idea that a homicide was being planned. Indeed, when he entered the Barnes house in the early morning hours of April 7, 1980, he had no idea he was going to find Beverly's dead body. Rather, he thought he was simply going over there to participate in staging a wreck.

*1221 (5) The statement of March 21, 1983

This statement is substantially consistent with Knight's testimony at trial.
Applying the unequivocal language of Rule 4.06 as quoted above to the facts of this case, we hold that the first four statements  those of December 28 and 29, 1982, and the two statements of March 17, 1983  were discoverable. Counsel for defense was entitled to reasonable access to these statements before being required to cross-examine the witness Knight. Barnes v. State, 460 So.2d 126, 133-135 (Miss. 1984); Patrick v. State, 285 So.2d 165, 167 (Miss. 1973).
Much is made of the notion that Barnes' attorney "was not surprised" and that he was nevertheless allowed to conduct an effective cross-examination of Knight. The record makes clear, however, that to this day Barnes' attorney has not seen the statements. Great insight is not required to see how important access to verbatim transcripts of previous statements given by a key witness would be in the cross-examination of that witness, particularly where over a three month period of time the witness told three conflicting stories. In such cases, we do not ask whether defense counsel was surprised by the witness' direct testimony. We inquiry whether the rule has been violated. Box v. State, 437 So.2d 19, 21 (Miss. 1983) ("A rule which is not enforced is no rule.")
Rule 4.06, in pertinent part, was designed to assure that defense counsel had access to materially conflicting prior statements given by the State's witnesses for use in cross-examination. Where the trial court has refused to order production of clearly discoverable witness statements which go to the heart of the credibility of the State's principal witness in a murder prosecution, we do not engage in nice calculations regarding the amount of resulting prejudice. See Ford v. State, 444 So.2d 841, 843 (Miss. 1984) and Morris v. State, 436 So.2d 1381, 1387 (Miss. 1983). We reverse and remand for a new trial.
REVERSED AND REMANDED
PATTERSON, C.J., HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., specially concur.
WALKER and ROY NOBLE LEE, P.JJ., dissent.
ANDERSON, Justice, specially concurring:
I concur in the judgment of the Court that the failure of the trial judge to order production of the statements of the witness Willard Knight was in contravention of the clear language of Rule 4.06 of our Uniform Criminal Rules of Circuit Court Practice. I similarly concur that, because of this error, the judgment of conviction entered below must be reversed. I write separately because of a special concern regarding the practical operation of the rule.
The pertinent language of Rule 4.06 provides:
Upon request of defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness' testimony, the statements shall be supplied to defense counsel prior to cross-examination.
The rule obviously contemplates that, when the defendant asks access to the prior statement of a witness for the prosecution, the trial judge will interrupt the proceedings in what will frequently be a hotly contested matter to make an in camera inspection of the statement. Applying that premise to the case at bar, the trial judge was asked to halt the trial and to read and digest five separate witness' statements aggregating almost eighty pages of small type and make a judgment as to whether those statements were in material conflict with the direct testimony of the witness Knight. The general conflict between the first two statements  where Knight denied knowing anything  and Knight's direct testimony *1222 in open court should have been apparent. On the other hand, the difference between the third and fourth statements of Knight's in court testimony is rather subtle, Knight saying in the statements that he knew he was helping Barnes plan a fake automobile accident but suggesting that he had no idea that a homicide was involved until after he arrived at the Barnes' house after midnight on Easter night, while in open court Knight had testified that he took part in the advance planning of the homicide with Barnes for more than a month in advance. What disturbs me is that the average person reading the statements may well require thirty minutes or more of careful perusal before detecting such a discrepancy. Thus seen, the rule is simply not workable.
Without doubt, the days of trial by ambush should be put behind us once and for all. Where life and liberty are at stake, we should design our procedural rules to hold to an absolute minimum the risk that a verdict will be the product of surprise or other arbitrary factor. The rule as presently written is no doubt well intentioned toward these ends. Practically speaking, however, it is a trial judge's nightmare. The ends of justice would in my mind be much better served by an amendment to the rule.
I would delete the language quoted above and would amend the opening provisions of Rule 4.06 be amended to read:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written or unwritten, recorded or otherwise preserved, of each such witness; ... . [proposed new language in italics]
This rule would be subject to the further provisions of Rule 4.06 restricting discovery specifically including the proviso found in the present rule that the court
may deny disclosure authorized by this section if it finds that there is a substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweighs any usefulness of the disclosure to defense counsel.
I believe the amendment I propose here would adequately vindicate the interests of justice in elimination of trial by ambush, would provide adequate opportunity for safeguarding the legitimate security and other interests of the prosecution and its witnesses, more workable in the hands of the trial judge.
PATTERSON, C.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., join this specially concurring opinion.
WALKER, Presiding Justice, dissenting:
I respectfully dissent from the holding of the majority that the defendant, appellant here, Harold David Barnes, was entitled to copies of the statements given by the state's witness to the investigating officers. The attorney for Mr. Barnes interviewed Mr. Willard Knight in that attorney's office and this record demonstrates that the attorney was fully aware that Mr. Knight had given several inconsistent statements as well as the relevant contents of those statements prior to Knight's final statement of March 21, 1983. Rather than adopt the rationale of the majority opinion, which, in my opinion, will lead to reversal in virtually every case where the trial court does not require the state to furnish to the defendant copies of statements of the state's witnesses prior to cross examination,[1] it would be better for this Court to adopt the reasoning of Justice Anderson's *1223 specially concurring opinion and simply require that all statements of state's witnesses be furnished to the defendant or his counsel prior to trial. That would eliminate what I foresee to be a reoccurring problem resulting in many unnecessary reversals.
Absent any showing of prejudice to the defendant in this case, I would affirm the conviction of Barnes and the judgment of the circuit court.
ROY NOBLE LEE, P.J., joins this dissent.
NOTES
[1] Barnes' counsel had filed a written pre-trial motion for production of all prior statements given by witnesses the State intended to call. The motion had not been acted upon.
[1] Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice states in part: "Upon request of the defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness's testimony, the statements shall be supplied to defense counsel prior to cross-examination."