508 So.2d 1067 (1987)
Rayford Brent ROBINSON
v.
STATE of Mississippi.
No. 56601.
Supreme Court of Mississippi.
May 20, 1987.
Jimmy D. McGuire, Kelly C. Walker, Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., DAN M. LEE and SULLIVAN, JJ.
*1068 SULLIVAN, Justice, for the Court:
On March 17, 1985 Rayford Brent Robinson was tried and found guilty of distribution of a controlled substance. Robinson was sentenced to a term of fifteen (15) years in the custody of the Mississippi Department of Corrections.
In February, 1983 Alvin Eubanks, a two time loser in drug related offenses was arrested for the third time. Instead of taking this habitual drug offender off our streets, the narcotic agents agreed to recommend that his records be passed to the files in return for his cooperation. This peculiar view of law enforcement has become all too familiar in drug related cases.
At any rate, Eubanks, the multiple offender Mississippian, went to Louisiana and arranged a drug deal with Robinson, to take place at the King's Inn, in Pascagoula, Mississippi. Thereafter, and in accord with the plan of Eubanks and the narcotics officers, two ounces of cocaine was imported from Louisiana into Mississippi to be exchanged for marijuana. Narcotic agents had rented the room at the King's Inn for the purpose of doing the dope deal and putting Robinson in jail. Present in the room with Robinson at the time of his arrest were two narcotic agents, Dean Shepard and David Jones, and the ubiquitous Mr. Eubanks.
Unhappy at the prospect of spending fifteen years in Mississippi courtesy of the unencumbered Mr. Eubanks, and aggrieved at the ruling of the trial court, Robinson has assigned two errors on this appeal.

I.

WAS IT ERROR TO REFUSE ROBINSON'S MOTION FOR DIRECTED VERDICT?
Robinson argues that he was entitled to a directed verdict because he established unrebutted evidence of entrapment. The prosecution argues, and indeed, the record reflects that there was conflicting evidence on the question of entrapment. In such circumstances the trial court was not in error in refusing to grant a directed verdict.
Dean Shepard, of the Mississippi Bureau of Narcotics, testified that he witnessed all the telephone calls between Eubanks and Robinson and that all the calls were tapped, and made from Shepard's office. Robinson was to exchange two ounces of cocaine with Eubanks and the two agents for twenty (20) pounds of marijuana. Both items are valued at $7,000.00. It was to be a straight up trade, with no boot.
Shepard said he was present when Eubanks was told by Robinson via telephone that the quality of the cocaine was excellent and that the weight was good, and that the cocaine was coming through Robinson's source. Shortly thereafter Robinson arrived at the King's Inn room and threw a brown paper bag containing the cocaine on the bed. Shepard weighed each packet of white powder, then gave them to Agent David Jones, who went into the bathroom to test the substance.
Shepard claims that Robinson asked that twenty pounds of marijuana be "fronted" to him. When Robinson said he was going to get the saw and cut the bale of marijuana, Shepard arrested him. Lt. Shepard also testified that he knew of no inducements or threats made in order to get Robinson to make the statements he made at the hotel room or on any of the tape recordings.
David Jones, a narcotics officer with the Jackson County Sheriff's Department, gave testimony that substantially corroborated the testimony of Lt. Shepard.
Eubanks, the habitual drug offender and informer for the narcotics officers, testified that he knew Robinson through prior drug deals. Eubanks testified that he called Robinson from Shepard's office and then went to Robinson's New Orleans apartment. Eubanks said that Robinson wanted to swap some cocaine for some "weed" because his connection was out of "weed". Eubanks denied that he threatened, assaulted, or coerced Robinson into the deal nor did he do anything that caused Mrs. Robinson to flee from him in tears. Eubanks also denied that he told Robinson he had to help him because his (Eubanks) life *1069 was on the line. Eubanks also denied that he supplied the marijuana or the cocaine used in the transaction, nor did he secretly warn Robinson that all the telephone calls were being recorded.
When Robinson's motion for directed verdict was denied Mrs. Robinson took the stand and said that Eubanks came to her home in New Orleans and told her husband that he was in a bind over a large debt and wanted Robinson to help him out. Mrs. Robinson further said that Eubanks came back several days later, was upset and angry, and threw Robinson up against the wall.
Robinson also testified that he participated in the deal because Eubanks threatened his wife and him. Robinson claims he declined to help Eubanks and several days later Eubanks returned to his home. He again declined to help and at that point Eubanks threw one of his crutches to the floor and shoved him against the wall, threathening him. Mrs. Robinson saw this and ran into the bedroom. At this point Robinson saw some type of pistol stuck in the pants of Eubanks, so he told Eubanks he would consider helping him if Eubanks would promise to leave his wife and him alone. Both Robinson and his wife testified that they called the police only to be told that nothing could be done.
Robinson said that Eubanks then made a third visit to his apartment and at this time instructed him on the drug terminology he would need in order to deal with the cocaine buyers. This instruction continued throughout the later telephone calls from Eubanks. Robinson contended that Eubanks told him that Eubanks was going to buy the cocaine and swap it for marijuana and he needed Robinson along for safety reasons. In accord with that plan Robinson rode with Eubanks to an apartment and remained in the car while Eubanks went inside. When he returned, Eubanks had a taped brown paper bag which he gave to Robinson and told him it was cocaine.
Robinson then drove to Pascagoula where he was to meet with Eubanks and his buyers. When he got to the King's Inn he met Eubanks, Shepard and Jones and was arrested.
In rebuttal, Officer Jones testified that at the motel Robinson asked him to "front" him twenty pounds of marijuana, in direct contradiction to Robinson's testimony.

THE LAW
Robinson relys upon Epps v. State, 417 So.2d 543 (Miss. 1982) and Daniels v. State, 422 So.2d 289 (Miss. 1982) as support for his position that because he had established entrapment as a matter of law he was entitled to a directed verdict. He is in error. Both cases stand for the proposition that where the prosecution fails to offer evidence that contradicts the defense evidence of entrapment then entrapment is established as a matter of law. In our case, the prosecution did offer evidence to contradict that offered by the defense, including that of the informant, Eubanks, who testified in the case in chief for the prosecution.
The affirmative defense of entrapment is a question of fact to be decided by the jury if, as here, there is no entrapment as a matter of law. Turner v. State, 415 So.2d 689 (Miss. 1982). Robinson failed to convince the jury just as he failed to offer uncontradicted evidence to the judge on the legal question.
The standard to be applied in considering if a directed verdict should be granted is too well known to bear repeating here. See Gray v. State, 387 So.2d 101 (Miss. 1980); Warn v. State, 349 So.2d 1055 (Miss. 1977); Carroll v. State, 196 So.2d 878 (Miss. 1967).
Therefore, the trial court did not commit error when the motion for directed verdict was not granted.

II.

WAS IT ERROR TO DENY A MISTRIAL WHEN EVIDENCE WAS ADMITTED NOT IN COMPLIANCE WITH DISCOVERY RULES?
Robinson was granted a motion to produce and compel disclosure of all material *1070 and tangible evidence. The prosecution did not inform defense counsel that it intended to introduce the forty pound bale of marijuana and also refused to produce the marijuana or any laboratory analysis for inspection by defense counsel. During the rebuttal testimony of David Jones the prosecution wheeled the bale of marijuana into the courtroom and into the presence of the jury. Defense counsel not only objected to the marijuana being shown to the jury and the witness questioned about it, he also objected when it was admitted into evidence. Robinson argues that the prosecution's refusal to produce the bale or an analysis violated Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court practice.

THE LAW
Discovery is properly done prior to trial. Jones v. State, 481 So.2d 798, 802 (Miss. 1985). Here the prosecution made no effort to comply with the discovery order of the Circuit Judge and therefore the introduction of the forty pound bale of marijuana was in violation of Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice.
The relevant portion of Rule 4.06 is as follows:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following: ...
(5) exhibit any physical evidence and photos to be offered in evidence... .
The essential purpose of Rule 4.06 is the elimination of trial by ambush and suprise. Disclosure is the hallmark of fairness and the quest for justice that should be the goal of the criminal justice system.
The prosecution contends that there is no rule of law or procedural guideline in this area and further that Robinson has not shown prejudice. We suggest the following cases as guidelines for those who do not realize the impact of what the Conference of Circuit Judges accomplished when they proposed Rule 4.06 to this Court: Box v. State, 437 So.2d 19, 20-26 (Miss. 1983); Griffin v. State, 504 So.2d 186 (Miss. 1987); Hall v. State, 490 So.2d 858, 859 (Miss. 1986); Hentz v. State, 489 So.2d 1386 (Miss. 1986); Gray v. State, 487 So.2d 1304, 1313-1315 (Miss. 1986); Henry v. State, 484 So.2d 1012, 1014 (Miss. 1986); Jones v. State, 481 So.2d 798, 802 (Miss. 1985); and Cabello v. State, 471 So.2d 332, 343 (Miss. 1985).
Under the procedural guidelines set out above it is imperative that the defense attorney object, as he did here. After the objection, "... the court's initial response should be that the defense be given a reasonable opportunity to examine the newly produced documents, photographs, etc." Jones v. State, 481 So.2d 798, 803 (Miss. 1985).
The trial judge should have immediately allowed the defense attorney an opportunity to examine the physical evidence and make a determination as to whether he wished to move for a continuance. Here that opportunity was never afforded defense counsel.
On the question of prejudice to Robinson it is difficult to imagine what could have been more prejudical than the introduction of a 40 bale of marijuana through a rebuttal witness in a case involving drug dealing. When the defense is entrapment and an attempt to show no prior dealing in drugs and no prior convictions the prosecution's sneak introduction of a 40 pound bale of marijuana before the jury could have done nothing but make the jury believe they were dealing with a big time drug dealer.
Further, we have on several occasions ruled that a showing of prejudice to the defendant is not always required when there is a discovery violation by the prosecution. In Henry v. State, 484 So.2d 1012 (Miss. 1986), Justice Dan Lee wrote:
Upon an objection to the admission of the bill of sale, the trial judge remarked: "Perhaps he is right technically speaking; but I don't  I find that its not significant. So, I'm going to let it be marked." This comment requires some examination. In Spots v. State, 427 *1071 So.2d 127 (Miss. 1983), citing Pryor v. State, 349 So.2d 1063 (Miss. 1977), this Court listed four factors which, at that time, were to be considered before reversal of a trial court's decision based on failure to produce discovery material. The fourth factor listed was . . "Whether ... the introduction of the evidence was harmful to the defendant in the light of all the circumstances." 427 So.2d at 129. This rule has been effectively superseded by subsequent cases. The Court in Morris v. State, 436 So.2d 1381 (Miss. 1983), specifically based its reversal of conviction on the fact that the state failed to produce required discovery material, "not because (the defendant) was prejudiced." Id. at 1385. This rule was reiterated in Ford v. State, 444 So.2d 841 (Miss. 1984), where it was emphasized that "The dictates of Morris must be followed." Id. at 843. The point was again made clear in Barnes v. State, 471 So.2d 1218 (Miss. 1985). "We do not engage in nice calculations regarding the amount of resulting prejudice." Id. at 1221, citing Ford, supra, and Morris, supra. Rather, the court said, "We inquire whether the rule has been violated." Barnes, 427 So.2d at 1221, citing Box v. State, 437 So.2d 19, 21 (Miss. 1983). "A rule which is not enforced is no rule." Id.

Henry at 1014.
Justice Lee cautioned however:
Our holding here should not be misinterpreted as indicating that failure to make pretrial disclosure requires per se reversal. We have recognized that nondiscovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accomodation. See, Foster v. State, 484 So.2d 1009 (Miss. 1986); Jones v. State, 481 So.2d 798 (Miss. 1985); Davis v. State, 472 So.2d 428 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985). See also, Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring). Such an opportunity was not afforded the appellant in the instant case.
Id.
Recently in Coates v. State, 495 So.2d 464 (Miss. 1986) we issued the following reminder:
The practice of trial by ambush, however savored by the skillful advocate, has long since been discredited. A trial  particularly a criminal trial where one's liberty is at stake  is not a game. It is a purposeful effort to achieve justice, its possibilities of success enhanced in no small measure by a fidelity to procedural fairness. It is in this context that this Court has been required time after time in recent years to reverse criminal convictions because at trial the prosecution was allowed to use evidence which in discovery it was obligated to disclose to the defense but for whatever reason withheld. See, e.g. Henry v. State, 484 So.2d 1012, 1013-14 (Miss. 1986); McKinney v. State, 482 So.2d 1129 (Miss. 1986); Box v. State, 437 So.2d 19, 21 (Miss. 1983); Morris v. State, 436 So.2d 1381, 1385-87 (Miss. 1983).
Coates at 467.
We are of the opinion that the trial judge should have allowed defense counsel to examine the bale of marijuana and have the benefit of any analysis the prosecution may have had, or offered defense counsel an opportunity to decide if he should request either a continuance or a mistrial. Not having done any of these things the trial judge should have excluded the marijuana from evidence.
REVERSED AND REMANDED FOR NEW TRIAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.