773 So.2d 955 (2000)
Cedric C. THOMPSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00197-COA.
Court of Appeals of Mississippi.
August 15, 2000.
Rehearing Denied October 10, 2000.
Certiorari Denied December 7, 2000.
*957 Thomas M. Fortner, Robert M. Ryan, Jackson, Attorneys for Appellant.
Office of the Attorney General by John R. Henry, Jr., Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
KING, P.J., for the Court:
¶ 1. Cedric Thompson has appealed his conviction of armed robbery by the Circuit Court of Hinds County, Mississippi. The circuit court sentenced Thompson to serve a term of thirty-six years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Thompson raises the following issues on appeal: 1) whether subsequent reindictment on armed robbery unfairly prejudiced the defendant and resulted in a denial of due process and violated his rights under the United States and Mississippi constitutions, 2) whether the prosecution committed plain and reversible error during closing argument by improperly commenting on the defendant's failure to testify at trial, 3) whether the trial court committed reversible error by failing to honor his right to compel attendance of witnesses to testify in his defense, 4) whether the trial court committed plain and reversible error in denying defense objections to hearsay, and 5) whether the trial court committed plain and reversible error by not following proper discovery procedures due to violations by the State.

FACTS
¶ 2. At 8:00 a.m. on December 11, 1994, Jean Collier, the cashier at Wasco Laundromat, was preparing coffee for customers when Cedric Thompson entered the facility. After purchasing a peppermint, Thompson headed to the exit. Before reaching the door, he turned and asked for a quarter in exchange for two dimes and a nickel. Collier, suspicious of what would happen next, stepped back from the register. Thompson displayed a .22 caliber gun and asked for all the money in the cash register. After taking some money, Thompson assaulted Collier and knocked her to the floor while shouting obscenities.
¶ 3. While still pointing the gun at Collier, Thompson took more money from the cash register and then attempted to flee the scene. Collier, fearing that Thompson *958 might shoot her or one of the customers, grabbed her gun from underneath the counter and fired three shots as Thompson stepped out of the door. Thompson fell to the floor and remained there until police arrived.
¶ 4. In September 1995, Thompson was indicted for robbery with a deadly weapon. However, because of the State's violation of the defendant's statutory right to speedy trial, this indictment was dismissed without prejudice on January 27, 1997. Thompson was reindicted on February 11, 1997, for robbery with a deadly weapon. On October 6, 1997, the day of trial, Thompson moved to dismiss the case with prejudice based on state and constitutional violations of his right to a speedy trial. The trial court denied this motion. At the close of trial, the jury found Thompson guilty of robbery with a deadly weapon. He was sentenced to serve a term of thirty-six years in the custody of the Mississippi Department of Corrections. After Thompson's post-trial motions were denied, he perfected this appeal.

ANALYSIS AND DISCUSSION OF THE LAW

I.

Whether subsequent reindictment on a charge of armed robbery unfairly prejudiced the defendant and resulted in a denial of due process and violated his rights under the United States and Mississippi constitutions.
¶ 5. In Thompson's first assignment of error, he asserts that his constitutional right to a speedy trial has been violated. Thompson contends that the dismissal without prejudice of the original indictment and subsequent reindictment for the same crime violated his constitutional right to a speedy trial. To determine whether these rights were violated, this Court must examine the events leading to the indictment and the reindictment.
¶ 6. The defendant's constitutional right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution. This right attaches, and time begins to run, upon the defendant's arrest. Handley v. State, 574 So.2d 671, 674 (Miss.1990). When the constitutional right to a speedy trial attaches, we are required to apply the balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine if the right to speedy trial has been denied. Smith v. State, 550 So.2d 406, 408 (Miss.1989). The four Barker factors, which must be balanced in light of all surrounding circumstances, are: (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right to speedy trial and (4) prejudice resulting to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. "No one of the factors is, in itself, dispositive; rather they must be considered together in light of all the circumstances." Adams v. State, 583 So.2d 165, 167 (Miss.1991). This Court considers these factors below.

Length of Delay
¶ 7. The first factor, length of delay, is considered to be the triggering mechanism for an inquiry into the other factors. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182. Under Mississippi law, a delay of eight months or longer is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). Although the supreme court has on a few occasions observed that a seven month delay was sufficient to merit an inquiry into the other Barker factors, this shorter time period has not become the rule. Adams v. State, 583 So.2d 165, 168 (Miss. 1991). The supreme court has continued to hold that presumptive prejudice usually arises only after an eight month delay. Herring v. State, 691 So.2d 948, 955 (Miss. 1997); Atterberry v. State, 667 So.2d 622, 626 (Miss.1995).
*959 ¶ 8. To place this issue in perspective, this Court has included a chronology of events beginning with Thompson's arrest on the robbery charge and ending with his trial:
December 11, 1994 Arrested for armed robbery
June 8, 1995 Indicted on armed robbery
 charge
July 21, 1995 Arraigned on armed robbery
 charge
October, 17, 1995 Tried and convicted on burglary
 charge
January 20, 1997 Motion to dismiss the armed
 robbery charge filed by
 Thompson
January 27, 1997 Armed robbery charge dismissed
 withoutprejudice
February 11, 1997 Reindicted on robbery charge
March 24, 1997 Motion for a continuance filed
 by Thompson
May 29, 1997 Motion for a continuance filed
 by Thompson
August 12, 1997 Motion for a continuance filed
 by Thompson
October 6, 1997 Tried on robbery charge
¶ 9. From December 11, 1994, the date of arrest, to October 6, 1997, the date of trial, 1031 days or two years, nine months and six days elapsed. On January 27, 1997, the court dismissed the armed robbery indictment filed in June of 1995 due to a statutory speedy trial violation which weighed against the State. In February of 1997 the State reindicted Thompson on the armed robbery charge. Following the February 1997 reindictment, trial was set for October 6, 1997. In accordance with the principle that a constitutional delay of eight months is prejudicial, Smith, 550 So.2d at 408, we find that Thompson was presumptively prejudiced and factor one of the Barker balancing analysis is triggered, weighing against the State.

Reason for the Delay
¶ 10. The State bears the responsibility of bringing a defendant to speedy trial. Turner v. State, 383 So.2d 489, 491 (Miss.1980). The State has offered no explanation for its tardiness in bringing Thompson to trial. Of the 1031 days between Thompson's trial and arrest, 834 of those days were attributable to the State. This spans the period from December 11, 1994, the date of Thompson's arrest, to March 24, 1997, the date of Thompson's first continuance. The record, however, is silent on the reasons for this delay.
¶ 11. The State reindicted Thompson on February 11, 1997, and Thompson thereafter requested a series of continuances. The supreme court has stated that "[a] delay caused by the actions of the defendant, such as continuances, tolls the running of the time period for that length of time, and is subtracted from the total amount of the delay." Taylor v. State, 672 So.2d 1246, 1259 (Miss.1996). Of the 1031 days between Thompson's arrest and trial, 197 days are tolled due to Thompson's actions. This 197 day delay was due to Thompson's three requests for continuances on March 24th, May 29th and August 12th of 1997. Accordingly, we weigh 197 days against Thompson and 834 days against the State.

Assertion of the Right
¶ 12. Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991). "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182. In the case at bar, this assertion was not shown.
¶ 13. On July 23, 1997, 955 days after he was arrested, Thompson filed a pro se "motion for relief from judgement or order." A motion to dismiss for failure to provide a fast and speedy trial was filed by Thompson's attorney on October 6, 1997. This motion came 1031 days after his arrest. Neither the July 23, 1997 pro se motion nor the October 6, 1997 motion were assertions or demands for speedy trial. The pro se motion was a demand for relief from the dismissal without prejudice which allowed the State to reindict Thompson on the armed robbery charge. The defense counsel's motion was a demand for dismissal for violation of Thompson's right to speedy trial. "A demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for a *960 speedy trial. Such a motion seeks discharge not trial." Perry v. State, 637 So.2d 871, 875 (Miss.1994). We weigh this factor against Thompson.

Prejudice to the Defendant
¶ 14. Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pretrial incarceration, 2) limitation of the possibility of impairment of defense, and 3) minimization of anxiety and concern of the accused. Barker, 407 U.S. at 532, 92 S.Ct. 2182. Thompson argues two of these factors in his brief.
¶ 15. Thompson argues that his defense was prejudiced because he was unable to locate a material witness, Frederick Jones, for trial. The record does not support this position. The police investigation revealed that Jones was present in the laundromat on the morning of the robbery. However, Jones told police that he did not see Thompson with a gun. Some time after the State issued its subpoena for Frederick Jones in 1995, Thompson issued his subpoena. Subpoenas issued by the State and by Thompson were returned unserved. Although the State made six additional attempts to locate Jones, Thompson made no effort to locate him until the date of trial in October of 1997.
¶ 16. Additionally, Thompson asserts that the dismissal of the initial indictment and subsequent reindictment for the same offense prejudiced him by violating his constitutional right to a speedy trial. The supreme court has held that dismissing an indictment and subsequently reindicting a defendant on the same charge does not result in prejudice since the 270 day rule would begin on the date of arraignment of the reindictment. Corley v. State, 584 So.2d 769, 771-72 (Miss.1991). See also Moore v. State, 556 So.2d 1031, 1033 (Miss.1990). While the statutory right to a speedy trial begins with arraignment, the constitutional right to speedy trial begins upon arrest. Black v. State, 724 So.2d 996 (¶ 14) (Miss.Ct.App.1998).
¶ 17. Thompson argues that the State is responsible for the lengthy delay that spans from the date of arrest to the date of trial. However, during this delay, Thompson was tried and convicted on October 17, 1995 and incarcerated on an unrelated burglary charge. Thompson was incarcerated on the burglary conviction from October 17, 1995 through October 6, 1997. Thompson spent 720 days incarcerated on the burglary charge, spanning from October 17, 1995 to October 6, 1997. During this period, Thompson filed three continuances on March 24th, May 29th, and August 12th of 1997. The delay, as a result of the continuances, weighed against Thompson. Of those 720 days, 523 were charged to the State. Because he was already incarcerated on this conviction, Thompson cannot claim prejudice for these 523 days based solely upon his incarceration. Winder v. State, 640 So.2d 893, 895 (Miss.1994). Reviewing Thompson's assertion of prejudice, he is left with only the presumptive prejudice cited above. Adams, 583 So.2d at 170.

Balancing
¶ 18. This Court weighs the initial presumption of prejudice regarding the delay in Thompson's favor. However, despite such a weighing, this Court does not find that prejudice resulted to Thompson's defense as a result of the delay. Thompson's assertions of prejudice centered on his inability to locate Frederick Jones, a material witness for his case, and his reindictment on the armed robbery charge. The record indicates that Thompson made little effort to locate this witness after the original indictment and made no effort to locate the witness after the reindictment. Additionally, Thompson must assume responsibility for delays due to requested continuances. Considering all the Barker factors under the totality of the circumstances and the evidence against Thompson, this Court finds that the initial presumption of prejudice has been overcome *961 and no violation of Thompson's right to a speedy trial has resulted.

II.

Whether the prosecution committed plain and reversible error during closing argument by improperly commenting on the defendant's failure to testify at trial.
¶ 19. In his second assignment of error, Thompson contends that during closing arguments the prosecution impermissibly made direct comments on Thompson's failure to testify and to present a defense to the charges in the indictment. Relying on Peterson v. State, 357 So.2d 113 (Miss.1978), Thompson asserts that such prosecutorial misconduct constituted reversible error. He maintains that the improper comments made in Peterson are factually similar to the comments made in the instant case. In Peterson, the prosecutor stated that Teresa Bryant, a victim of fondling, was the only witness who testified about the defendant touching her. Id. at 117. Bryant and Peterson were the only witnesses present during the incident. The supreme court reversed Peterson's conviction based on the improper comments made by the prosecutor while reasoning that the comment was directed towards Peterson's guilt or innocence. Id.
¶ 20. Peterson is distinguishable from the case at bar. In this case, the prosecution's comments were not directed towards Thompson's innocence or guilt. The statements were based on the defense's failure to provide a defense and produce witnesses. Moss v. State, 727 So.2d 720 (¶ 30-32) (Miss.Ct.App.1998). Unlike Peterson, Collier and the defendant were not the only witnesses to the robbery and shooting. There was another witness present in the laundromat.
¶ 21. We note that broad latitude is allowed in closing arguments. Davis v. State, 660 So.2d 1228, 1254 (Miss. 1995) (citing Johnson v. State, 477 So.2d 196, 209 (Miss.1985)). However, "[t]he prosecution is prohibited from making a direct comment, or reference by innuendo or insinuation to a defendant's failure to testify on his own behalf." Taylor v. State, 672 So.2d 1246, 1266 (Miss.1996). The question is whether the comment of the prosecutor can reasonably be construed as a comment upon the failure of [the accused] to take the stand. Id. What constitutes an improper comment on the defendant's failure to testify is "to be determined from the facts and circumstances of each case." Jones v. State, 669 So.2d 1383, 1390 (Miss.1995).
¶ 22. The first objection during the prosecution's closing argument occurred when the prosecutor stated, "Please tell me one witness that said that Cedric Thompson didn't go in that store and rob Jean Collier just like she told you he did." Thompson objected, and the trial judge overruled the objection. The defense reserved the right to make further objections and motions based on that comment at the close of the argument. The second instance of misconduct of which Thompson complained occurred when the prosecutor stated, "What testimony do you have other than Jean Collier telling you exactly what he did?" At that point, Thompson objected, arguing that the comment was a direct comment on the defendant's failure to testify. Thompson moved for a mistrial and a discussion was held outside the hearing of the jury. The court overruled Thompson's motion, and the prosecutor continued with his closing argument. None of the complained of remarks, alone or together, amounts to reversible error. The record supports the prosecutor's statements, and no error was committed in overruling Thompson's objections.

III.

Whether the trial court committed reversible error by failing to honor his right to compel attendance of witnesses to testify in his defense.
¶ 23. In his third assignment of error, Thompson claims that he was denied *962 the right guaranteed him under the Sixth Amendment to the Constitution of the United States to "have compulsory process for obtaining witnesses in his favor." Specifically, Thompson claims that Frederick Jones and Kendrick McDonald could have, if called to testify, provided evidence that would have established Thompson's version of events. Additionally, Thompson claims that the delay in his trial resulted in the loss of witnesses vital to his defense. Thompson further contends that the trial court committed reversible error by not granting a continuance or mistrial sua sponte until the witnesses could be located.
¶ 24. The record indicates that in September of 1995 the State issued its first subpoena to Frederick Jones based on information he had given to police during their investigation. Jones told police that he was present in the laundromat on the morning of the robbery. Jones revealed that he witnessed Collier shoot Thompson, but did not see Thompson with a gun. The State issued a total of seven subpoenas that corresponded with scheduled trial dates, and each one was returned unserved. Thompson issued one subpoena to Jones in 1995 and never attempted to locate the witness again until the date of trial in October of 1997. The record is silent on Thompson's efforts to subpoena Kendrick McDonald or the substance of his testimony. Such a total failure to attempt to secure the presence of a witness at trial is fatal to a claim of prejudice. Rhymes v. State, 638 So.2d 1270, 1274 (Miss.1994).
¶ 25. Under our law the defendant is entitled to compulsory process for witnesses within the state and such witnesses are required to attend and testify. Diddlemeyer v. State, 234 So.2d 292, 295 (Miss.1970). However, because Thompson failed to make a reasonable effort to locate Jones and made no effort at all in finding McDonald, we find no reversible error.

IV.

Whether the trial court committed plain and reversible error in denying defense objections to hearsay.
¶ 26. In Thompson's fourth assignment of error, he asserts that the State elicited impermissible hearsay from Officer Eugene Randle during redirect examination. Officer Randle gave testimony which concerned the identity of the individual responsible for the shooting and the possibility of another individual being responsible for the events. The officer's testimony was based primarily on information discovered during the course of his investigation. Thompson urges the Court to reverse the conviction because the admission of the hearsay testimony unfairly prejudiced him and did not qualify under any legitimate exception to the rules of evidence.
¶ 27. The supreme court has consistently held that the testimony of officers concerning the results of their investigation is inadmissible hearsay, which upon admission, constitutes reversible error. Bridgeforth v. State, 498 So.2d 796, 800 (Miss. 1986); Ratcliff v. State, 308 So.2d 225, 227 (Miss.1975). See also McVeay v. State, 355 So.2d 1389, 1391 (Miss.1978).
¶ 28. Thompson offered four hearsay objections during Officer Randle's redirect testimony. Of the four objections, the trial judge sustained those defense objections to questions concerning whether anyone volunteered information about the robbery and whether anyone other than the defendant had touched the gun. Thompson's first objection interrupted the prosecutor's question. This question was not completed, and no answer was given to it. Therefore, the jury did not hear the substance of the question and no prejudice resulted. After the final hearsay objection was made and overruled by the court, the prosecution pursued another subject area. The prosecution's question requested third party information which amounted to hearsay, but no response was elicited. Thus, no prejudice resulted from this question. The *963 State asserts that if Officer Randle's testimony was erroneously admitted as hearsay, it was harmless error. We agree with the State. Because the State elicited no improper hearsay testimony and the defendant was not prejudiced, reversal of the conviction is unwarranted. Thus, we find that the defendant suffered no prejudice as a result of Officer Randle's testimony.

V.

Whether the trial court committed plain and reversible error by not following proper discovery procedures due to violations by the State.
¶ 29. In his last assignment of error, Thompson asserts that the trial court erred by allowing the State to call Wydette Hawkins to testify because he was not listed as a potential witness. Thompson argues that allowing Hawkins testimony amounted to trial by ambush. Thompson asserts that his rights to confrontation and due process were effectively denied.
¶ 30. Thompson, relying on Box v. State, 437 So.2d 19 (Miss.1983), contends that the trial court committed reversible error when it failed to order a meaningful continuance to allow an evaluation of the new evidence or to grant a mistrial. In Box, which is distinguishable from the case at bar, the supreme court reversed and remanded the case for a new trial in part because of the prosecution's failure to disclose the identity of a prospective witness who could most likely place Box with two other accomplices on the day of the robbery. Id. at 21. The prosecution decided to disclose the identity of the witness the evening before trial despite having knowledge of the witness's existence nine months prior to trial. Id. The trial court did not order a continuance to allow the defense an opportunity to interview the prospective witness or grant a mistrial because of the discovery violation. Limiting the decision to reverse and remand in Box to the specific facts presented, the supreme court stated that reversal is not warranted in every case in which there is some failure by the State to follow discovery procedure. Id. See also Robinson v. State, 508 So.2d 1067, 1071 (Miss.1987).
¶ 31. In the instant case, the State decided to call Wydette Hawkins during its case-in-chief in response to the defense's cross-examination of one of its witnesses about the amount of money stolen and whether an accountant or bookkeeper verified the amount stolen. Hawkins testimony, which was not necessary to prove that a robbery had occurred, was introduced to prove the amount of money stolen from the store and to explain how the amount was calculated based on a record prepared on the day of the robbery. The State claimed no knowledge of the existence of the documentation until the morning of the trial. Although the State failed to follow correct discovery procedures in disclosing Hawkins as a prospective witness in accordance with Rule 9.04(I)(1) and (2), Thompson was able to interview Hawkins once during a recess for lunch and again when the court made its ruling ordering a continuance for trial until the next morning. Our supreme court has recognized that "[n]on-discovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accommodation." Robinson, 508 So.2d at 1071.
¶ 32. Because the substance of Hawkins's testimony was not required to prove that a robbery occurred and consisted of mere surplusage, we consider it harmless error. There is no evidence that Thompson was prejudiced by the State's failure to identify Hawkins as a prospective witness since his testimony amounted to harmless error. This assignment of error is without merit.
¶ 33. THE JUDGEMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND A SENTENCE OF THIRTY-SIX (36) YEARS TO RUN CONSECUTIVE TO ANY OTHER SENTENCE PRESENTLY SERVING IN THE CUSTODY *964 OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., Concur.