GRIFFIS, J.,
for the Court.
¶ 1. The Appellant’s motion for rehearing is granted. The original opinion is withdrawn and this opinion is substituted.
¶ 2. A Hinds County Circuit Court jury found Melvin Darnell Ransom guilty of strong-arm robbery. The trial judge sentenced Ransom to fifteen years in the custody of the Mississippi Department of Cor *711 rections and denied Ransom’s post-trial motion for a judgment notwithstanding the verdict or in the alternative for a new trial. Feeling aggrieved, Ransom has appealed and argues that the trial court erred in refusing to allow the testimony of certain alibi witnesses and that the assistance of counsel that was accorded him was ineffective.
¶ 3. Finding reversible error, this Court reverses the trial court’s judgment and remands for a new trial.
FACTS
¶ 4. Leigh White went into a post office where she was confronted by a person who snatched her handbag and ran away. White yelled at the robber and ran after him. .The robber then turned around, came back toward White, hit her in the face, and knocked her down.
¶ 5. White’s boss, Lou Morlino, came outside when he saw White lying against the glass door of the post office. Morlino chased the robber and got as close as the driver’s side of the robber’s vehicle but was unable to detain him. Both White and Morlino witnessed the robber getting into the get-away vehicle. Each gave a physical description of the robber to the police. White was able to provide a description of the vehicle, while both White and Morlino were able to recall the license plate number. Morlino indicated that when he ran alongside of the robber’s vehicle, there was no other person in the vehicle but the robber.
¶ 6. Detective A1 Taylor testified that when he ran the tag number that was given to' him by White and Morlino he learned that the vehicle was registered to Melvin Darnell Ransom. The description of the vehicle given by White also matched Ransom’s vehicle. Taylor later contacted White and presented her with a photographic line-up of the potential suspects. White identified Ransom as the person who had robbed her. During the trial, White and Morlino both identified Ransom as the person who attacked and robbed White.
¶ 7. Ransom denied that he committed the robbery and stated that he had an alibi. Ransom alleged that his cousin, Vincent McGrew, committed the robbery. When McGrew took the stand, he asserted his Fifth Amendment right against self-incrimination and refused to answer any further questions posed by Ransom’s trial attorney. Ransom was not allowed to present any other alibi witnesses.
¶ 8. Other pertinent facts will be related during the discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Refusal to Allow Testimony from Alibi Witnesses

¶ 9. Ransom’s attorney did not give his witness list to the State until the morning of the trial. The list included Ransom’s girlfriend, his sister and his mother. The State moved to exclude the testimony of these witnesses on the basis of unfair surprise. The court gave the State an opportunity to interview the witnesses. After the interviews, the State still insisted that the witnesses not be allowed to testify. The State explained that it had not had time to investigate certain things that had been disclosed by the witnesses. However, the State did not request a continuance, and based on the State’s objection, the trial court refused to allow the witnesses to testify.
¶ 10. Ransom made no proffer of the excluded witnesses’s testimony. However, we glean from the representations made by the State at trial, that each of the *712 witnesses would have given alibi testimony-had they been allowed to testify.
¶ 11. The record does not indicate that the State ever sought to discover whether Ransom would use an alibi defense. Our perusal of the record did not locate a written demand by the prosecution under Rule 9.05 of the Uniform Rules of Circuit and County Court Practice. Had such a demand been made, Ransom would have been obligated to serve a notice of alibi defense on the prosecution within ten days of the demand by the prosecutor. URCCC 9.05. Indeed, during the hearing on Ransom’s motion for a new trial, the State and counsel for Ransom stipulated that the State did not serve a written demand of alibi defense on Ransom. Therefore, it appears that Ransom violated the general discovery rule which requires reciprocal discovery rather than the specific rule requiring disclosure of the alibi defense.
¶ 12. Ransom argues that the trial court erred and abused its discretion in excluding the testimony of his defense witnesses and that this exclusion denied to him his constitutional right to compulsory process which consists of his right to call witnesses to aid in his defense. The State counters that Ransom’s constitutional argument of denial of compulsory process is procedurally barred because it is being raised for the first time on appeal. The State also contends that the trial judge followed the rules and imposed a remedy available to him under the rules and thus did not abuse his discretion.
¶ 13. “[T]he standard of review when a trial court institutes sanctions for discovery abuses is ‘whether the trial court abused its discretion in its decision.’ ” Gray v. State, 799 So.2d 53, 60(¶ 26) (Miss.2001) (citing Kinard v. Morgan, 679 So.2d 623, 625 (Miss.1996)). “The trial court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will not be set aside in the absence of an abuse of that discretion.” Id. This Court must decide whether the trial court could have properly made the decision which it made. Caracci v. Int’l Paper Co., 699 So.2d 546, 556(¶ 16) (Miss.1997). Under this standard, an appellate court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors. Id.
¶ 14. Discovery is properly done prior to the commencement of a trial. Robinson v. State, 508 So.2d 1067, 1070 (Miss.1987). Here, Ransom’s attorney made no effort to comply with the discovery rules before Ransom’s trial commenced. “[Pjrosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is no rule.” Gray, 799 So.2d at 61 (¶ 28). Ransom’s attorney failed to comply with the discovery rules.
¶ 15. Rule 9.04 of the Uniform Rules of Circuit and County Court allows the trial court, under certain circumstances, to exclude evidence as a sanction for discovery violations. The pertinent portion of subsection I of Rule 9.04 reads as follows:
If during the course of the trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
*713 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
The trial court is required to follow the same procedure for discovery violations by the defense. URCCC 9.04(I)(3).
¶ 16. Here, the State, after interviewing the witnesses, did not seek a continuance or a mistrial as contemplated by the rule, although it did claim prejudice and unfair surprise. The rule does not address the situation where, as here, a claim of prejudice and unfair surprise is made, but' a mistrial or continuance is not requested.
' ¶ 17. Ransom contends that this discovery sanction was too harsh and that the trial judge abused his discretion in not allowing the testimony of Ransom’s alibi witnesses since this disallowance violated his Sixth Amendment right to compulsory process for the benefit of his defense. Ransom cites to the Supreme Court repudiation of exclusion of substantial portions of a defendant’s evidence in Taylor v. Illinois, 484 U.S. 400, 414-16, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). As set forth below, because we find that this case must be reversed and remanded due to the ineffective assistance of Ransom’s counsel, we do not address Ransom’s claim that his Sixth Amendment right was violated.

2. Ineffective Assistance of Counsel

¶ 18. The next error that Ransom cites is the ineffectiveness of his trial attorney. “The benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To successfully claim ineffective assistance of counsel, Ransom must meet the two-pronged test set forth in Strickland and adopted by the Mississippi Supreme Court. Stringer v. State, 454 So.2d 468, 476 (Miss.1984). Under the Strickland test, Ransom must prove under the totality of the circumstances, that (1) his attorney’s performance was defective and (2) such deficiency deprived the defendant óf a fair trial. Id. at 476-77. Such alleged deficiencies must be presented with “specificity and detail.” Perkins v. State, 487 So.2d 791, 793 (Miss. 1986). This Court’s review begins with a strong, but rebuttable presumption that the attorney’s conduct fell within the wide range of reasonable professional assistance. Hiter v. State, 660 So.2d 961, 965 (Miss.1995).
¶ 19. Ransom must show that there is a reasonable probability that but for his attorney’s errors, he would have received a different result in the trial court. Stringer v. State, 627 So.2d 326, 329 (Miss.1993). With respect to the overall performance of the attorney, “counsel’s failure to file certain motions, call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy” and does not give rise to an ineffective assistance of counsel claim. Cole v. State, 666 So.2d 767, 777 (Miss.1995). In order to find for Ransom on the issue of ineffective assistance of counsel, this Court will have to conclude that his trial attorney’s performance as a whole fell below the standard of reasonableness and that the mistakes made were serious enough .to erode confidence in the outcome of the trial below. Coleman v. State, 749 So.2d 1003, 1012 (¶ 27) (Miss.1999).
*714 ¶ 20. To support his assignment of error, Ransom points out that his trial attorney failed to follow the elementary rules of the court by making reciprocal discovery and furnishing the State with the names of his witnesses. Ransom insists that his trial attorney was negligent in waiting until the morning of the trial to supply the State with a complete witness list. To differentiate trial strategy from serious or fundamental error, Ransom points to the fact that his counsel clearly failed to investigate his alibi, ie., the whereabouts of McGrew on the date of the criminal act, thereby denying Ransom the benefit of an alibi defense at trial.
¶21. In Payton v. State, 708 So.2d 559(¶ 8) (1998), the Mississippi Supreme Court held:
It is true that this Court should give deference to an attorney’s judgment in what investigation should be conducted. However, there are limits. “ ‘[A]t a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case.’ ” Ferguson v. State, 507 So.2d [94], 96 (Miss.1987) (emphasis in original) (quoting Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir.1985)).
Here, just as in Payton, the independent investigation by Ransom’s attorney appears non-existent.
¶ 22. To arrive at this conclusion, we examine the alleged deficiency by his counsel, i.e., the reasons why Ransom’s attorney provided the witness list to the State on the day of the trial. The record establishes that Ransom’s attorney had not planned to' call these witnesses because of his mistaken belief that McGrew was in jail on the day of the robbery. Ransom’s attorney never confirmed this fact, and indeed, McGrew was not in jail. This information was readily available to Ransom’s counsel.
¶ 23. Despite this, the judge sanctioned the discovery violation when he refused to allow Ransom’s alibi witnesses to testify. This type of discovery sanction has only been upheld when it was done willfully or with the intent to gain some tactical advantage over the prosecution. See Coleman v. State, 749 So.2d 1003, 1009(¶ 15) (Miss.1999); Taylor v. Illinois, 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Here, the record indicates that the discovery violation by Ransom’s attorney was neither willful nor made with the intent to gain a tactical advantage. The attorney’s failure evidences his insufficient investigation of his client’s principal defense to the charges. Thus, we find that Ransom has met the first prong of the Strickland test, his attorney’s performance was defective.
¶24. Now, we must consider the second prong of the Strickland test, whether such deficiency deprived Ransom of a fair trial.
¶ 25. Prior to trial, Ransom informed his attorney that McGrew, his cousin, had borrowed his car on the day in question and committed the robbery. In the pretrial hearing, Ransom’s attorney stated that he was aware that, immediately after his arrest, Ransom reported to police that McGrew had committed the crime. Ransom’s attorney admitted that he was aware of Ransom’s alibi defense several months prior to trial, yet he argued that he did not discover the validity of Ransom’s alibi until the day before the trial.
¶ 26. Ransom established that the testimony from his girlfriend (Marcy Thurman), his mother (Mattie Ransom) and his sister (Charlene Ransom) was available to support his alibi. Each of these witnesses were prepared to testify that Ransom was at home on the day in question, supporting his claim that McGrew had borrowed his *715 car on the day in question. Ransom presented an affidavit from his girlfriend claiming that, on the day in question, McGrew borrowed Ransom’s car and took her to work.
¶ 27. We find that, under a Strickland analysis, there is a sufficient basis to conclude that Ransom’s attorney’s performance was deficient and that with the alibi witnesses’ testimony there is a reasonable probability that the outcome of the trial would have been different if some minimal pretrial investigation had been performed. Here, just as in Strickland and Payton, Ransom’s trial attorney’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
¶ 28. The dissent has weighed the evidence and determined that a jury will agree with his interpretation of the evidence, reaching the same conclusion. That may well be the case. However, this Court may not usurp the jury’s role. We do not decide Ransom’s ultimate guilt or innocence. Instead, we have determined that there is a reasonable probability that but for his attorney’s errors, Ransom would have received a different result in the trial court. Stringer, 627 So.2d at 329. We reverse and remand for a new trial because we conclude that Ransom’s attorney’s performance fell below the standard of reasonableness and that the mistakes made were serious enough to erode confidence in the outcome of the trial below. Coleman, 749 So.2d at 1012 (¶27). On remand, the jury may well reject Ransom’s alibi.
¶ 29. Accordingly, we reverse and remand this case for a new trial.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF STRONG-ARM ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
BRIDGES, P.J., MYERS, AND CHANDLER, JJ., CONCUR. IRVING, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND LEE, P.J. BARNES AND ISHEE, JJ., NOT PARTICIPATING.